WASTE DISTILLATION TECH-
NOLOGY, INC., a Delaware
corporation, Plaintiff,

v.

PAN AMERICAN RESOURCES, INC., a
Delaware corporation, Defendant.

WASTE DISTILLATION TECH-
NOLOGY, INC., a Delaware
corporation, Plaintiff,

v.

John TOMAN, Defendant.

Civ. A. Nos. 91–027–JLL, 91–302–JLL.

United States District Court,
D. Delaware.

Oct. 10, 1991.

Steven D. Goldberg of Theisen, Lank, Mulford & Goldberg, Wilmington, Del., and Oliver P. Howes, Jr., and Ronald J. McGaw of Nims, Howes, Collison & Isner, New York City, of counsel, for plaintiff.

Gary W. Aber of Heiman, Aber & Goldlust, Wilmington, Del., Kevin R. McSpadden of Andrews & Kurth, Los Angeles, Cal., and Joel M. Ward, Beverly Hills, Cal., of counsel, for defendants Pan American Resources, Inc. and John Toman.

## MEMORANDUM OPINION

LATCHUM, Senior District Judge.

On January 16, 1991, Plaintiff Waste Distillation Technology, Inc. ("WDT") filed C.A. No. 91–027–JLL (# 27) against Pan American Resources, Inc. ("PAR") alleging unfair competition [1], conspiracy to defraud, misappropriation of trade secrets and copyrights, and copyright infringement. (# 27 Docket Item ["D.I."] 1.) Approximately four months later, WDT filed a nearly identical action against John Toman, a consultant to WDT and the president and chief executive officer of PAR. (91–302–JLL [# 302] D.I. 1.) Defendants moved to transfer the suits to the United States District Court for the Central District of California. Defendant Toman also moved to consolidate the two actions.

For the reasons set forth below, the Court has determined that consolidation of the two actions is appropriate to conserve judicial resources. However, the defendants have not persuaded this Court that a transfer should be granted.

I. *Relevant Background Facts From The Filed Documents*

WDT, a Delaware Corporation with its principal place of business in Irvington, New York, has been actively engaged in the research, design, manufacture and sale of a unique proprietary, destructive distillation system for converting garbage into energy. (# 27 D.I. 1 ¶ 1, D.I. 18; # 302 D.I. 1 ¶¶ 1, 11.) It has developed trade and business secrets and, except for necessary disclosures, WDT contends that it kept these secrets under close control at all times. (# 27 D.I. 1 ¶ 7; # 302 D.I. 1 ¶ 7.)

PAR is a "non-operating" Delaware Corporation. (# 27 D.I. 16, 39; # 302 D.I. 3, 14.) It is engaged in the design, development, manufacture, sale and licensing of technology for the disposal of, and conversion to energy of, municipal solid waste. (# 27 D.I. 17; # 302 D.I. 6.) Although it has few corporate assets, PAR owns a patent, assigned to it by inventors William M. Fio Rito and Ralph E. Kidd, covering a waste converter system called the "Lantz Converter." PAR granted an exclusive, nearly worldwide license to WDT to market the Lantz Converter on August 20, 1980. (# 27 D.I. 1 ¶¶ 9, 17; # 302 D.I. 1 ¶¶ 9, 6.) The license permitted WDT to manufacture, sell, lease, operate, sublease or sublicense the equipment and processes disclosed in PAR's patents. PAR renewed the license on May 24, 1984 but terminated the agreement in September of 1987, citing WDT's failure to make royalty payments to PAR. (# 27 D.I. 17; # 302 D.I. 6.)

Defendant Toman, a citizen and resident of California, is the acting President of PAR. (# 27 D.I. 17; # 302 D.I. 6.) He became a consultant for WDT after requesting employment from Mr. William A. Fio Rito, WDT's President and Chief Executive Officer [2] and a West Point classmate. (# 27 D.I. 1 ¶ 10, 39; # 302 D.I. 1 ¶ 10, 14.) Plaintiff asserts that, in his position as a consultant, Mr. Toman had free access to Plaintiff's business, clients, facilities, confidential files, proprietary data, and confidential engineering drawings. (# 27 D.I. 1 ¶ 11; # 302 D.I. 1 ¶ 11.) Plaintiff alleges that, while acting as a consultant for WDT, Mr. Toman acquired a controlling management position with PAR without WDT's

---

1. Plaintiffs contend that the Defendants' actions constitute unfair competition under the laws of the United States, Delaware, New York, and California.

2. Mr. William A. Fio Rito's father, William M. Fio Rito, was a major shareholder and former CEO of Defendant PAR during the time material to the plaintiff's complaint. (# 27, D.I. 18; # 302 D.I. 11.)

knowledge. (# 27 D.I. 1 ¶ 10; # 302 D.I. 1 ¶ 10.)

The plaintiff filed suit in the District of Delaware against PAR on January 16, 1991 and against John Toman on May 22, 1991. Allegedly, Mr. Toman conspired with PAR to utilize his dual position to misappropriate WDT's competitive advantage and to fraudulently acquire trade secrets and proprietary information from WDT.[3] (# 27 D.I. 1 ¶ 16; # 302 D.I. 1 ¶ 16.) The acts allegedly took place in a variety of locations, including New York, Maryland, the District of Columbia, Virginia, Ohio, Missouri, Kansas, Texas, Hawaii, California, The Netherlands, and Ontario, Canada. (# 27 D.I. 18, 39; # 302 D.I. 11, 14.) Plaintiff maintains that this continuing use unfairly deprived Plaintiff of a commercial advantage, and unfairly competed with Plaintiff in exploitation of the technology.

## II. *Consolidation Of Actions*

█ Rule 42(a) of the Federal Rules of Civil Procedure gives this Court broad powers to consolidate actions involving common questions of law or fact if, in its discretion, such consolidation would facilitate the administration of justice. *Ellerman Lines, Ltd. v. Atlantic & Gulf Stevedores, Inc.*, 339 F.2d 673, 675 (3d Cir.1964), *cert. denied*, 382 U.S. 812 (1965). The mere existence of common issues, a prerequisite to consolidation, does not require consolidation. *Rohm & Haas Co. v. Mobil Oil Corp.*, 525 F.Supp. 1298, 1309 (D.Del. 1981). The savings of time and effort gained through consolidation must be balanced against the inconvenience, delay or expense that might result from simultaneous disposition of the separate actions. *Id.* The proper administration of justice requires that issues be resolved without unnecessary cost or delay.

█ This Court holds that the administration of justice in the two pending cases would be best served by consolidation. Both suits involve the same plaintiff, an identical factual setting, the same witnesses, documents, and exhibits. The two actions also assert identical legal issues. The only appreciable difference between the two complaints is an additional claim for relief against PAR where the plaintiff seeks to have PAR adjudged trustee of all the confidential information that Toman allegedly conveyed from WDT to PAR. (# 27 D.I. 1, 19 Ex. A; # 302 D.I. 1, 8.)

Consolidation will encourage orderly pretrial discovery, save witness time and expense, avoid duplicitous filings, and eliminate the risk of inconsistent results between two proceedings. Not only will resolution of separate actions waste time, energy and money but nothing has been presented to indicate that any inconvenience, delay or expense will result from simultaneous disposition. Therefore, this Court holds that consolidation of the two pending suits is appropriate.

## III. *Transfer Of Suit To The Central District of California*

In its discretion, this Court may transfer a civil action to any other district where it might have been brought. 28 U.S.C. § 1404(a) (1976); *Hoffman v. Blaski*, 363 U.S. 335, 80 S.Ct. 1084, 4 L.Ed.2d 1254 (1960) (must have right to bring action independent of Defendant's wishes or waiver). The analysis concerning the district where the suit "might have been brought" is limited to the existing facts and circumstances at time of filing the lawsuit. *Hoffman v. Blaski*, 363 U.S. at 342–343, 80 S.Ct. at 1088–89 (determination not made at time of transfer); *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 24 (3d Cir.1970), *cert. denied*, 401 U.S. 910, 91 S.Ct. 871, 27 L.Ed.2d 808 (1971) (must have unqualified right at the time action commenced). Thus, even though this Court holds that consolidation is appropriate, each action must be reviewed separately on the question of transfer based upon the facts and

---

**3.** Toman allegedly misappropriated, plagiarized, and used WDT proprietary information as well as deceived a WDT licensee and a potential WDT business partner to obtain confidential WDT information. Toman also allegedly solicited funds from WDT clients and held out the WDT technology as belonging to PAR.

circumstances existing at the time of the commencement of the respective action.

■ The analysis requires two steps: (1) could the suit have been brought in the transferee district and (2) in which district would the proper administration of justice be best served. The first step is mechanical, not discretionary. *Ballard Medical Products v. Concord Laboratories Inc.*, 700 F.Supp. 796 (D.Del.1988). The second step is discretionary and the plaintiff's choice of forum is a paramount consideration. The moving defendant bears the burden of proving that justice requires a substitute forum and a transfer is not to be liberally granted. *Shutte v. Armco Steel Corp.*, 431 F.2d at 25. "[U]nless the balance of convenience of the parties is *strongly* in favor of defendant, the plaintiff's choice of forum should prevail." *Id.* (citing *Owatonna Manufacturing Co. v. Melroe Co.*, 301 F.Supp. 1296, 1307 (D.Minn.1969)).

A. Where the Suits "Might Have Been Brought"

The first step, determining where the suits might have been brought, involves a mechanical analysis of subject matter and personal jurisdiction and proper venue. Venue is the sole issue of dispute in the pending two cases because subject matter and personal jurisdiction are not contested by the parties. The defendants assert that the Central District of California [hereinafter "Central District"] is the proper venue but then they cloud the issue by referring to the Southern and Northern Districts of California in support of their argument.

This Court is reluctant to resolve this issue because, based upon the briefs and evidence presented, it is doubtful that the

defendants have clearly shown that both actions could have been brought in the Central District. If it is questionable whether the plaintiff could have commenced suit in the transferee district, the case cannot be transferred to that district. *Shutte v. Armco Steel Corp.*, 431 F.2d at 24 (strong doubts as to the validity of the long-arm statute).

1. *The Applicable Law Governing Venue*

Both actions cite 28 U.S.C. §§ 1391 and 1400 as the basis for proper venue.[4] The general venue statute, § 1391(b), provides that in a case not founded solely on diversity of citizenship, venue is proper

(1) in any district in which any defendant resides, if all defendants reside in the same state, or

(2) in any district where most of the events giving rise to the claim occurred, or

(3) in any district in which any defendant may be found if there is no district where the action may otherwise be brought.

According to § 1391(c), in a multidistrict state, the corporation is deemed to reside in the district where it would have sufficient contacts if that district were a separate state. If no such district exists, the corporation resides in the district where it has the most significant contacts. Additionally, if multiple defendants exist, § 1392 permits any transitory civil action to be brought in any district where a defendant resides if all defendants reside in different districts of the same state. *Sinwell v. Shapp*, 536 F.2d 15 (3d Cir.1976) (where all defendants reside in multidistrict state but in different districts, venue is proper in any district where defendant resides).

The special venue provision for copyright cases, § 1400(a), lays venue "in the district in which the defendant or his agent resides

---

4. The parties have not argued that § 1400 excludes venue consideration under § 1391, the general venue statute. The language in § 1391 explicitly states that it controls unless otherwise provided by law and it is generally the case that when a special venue provision provides for venue in a district which would not be proper under the general venue statute, the special venue provision governs. 1A–Pt 2 J. MOORE & B. RINGLE, MOORE'S FEDERAL PRACTICE

¶ 0.344[1.–1] at 4206–4209 (MB 1991) [hereinafter Moore's Federal Practice]. Here, both sections are cited in the complaint and it is not apparent that § 1400 supersedes the general venue provisions, either by its terms or effect. Thus, venue under each is considered. *See Mihalek Corp. v. Michigan*, 595 F.Supp. 903, 906–907 (E.D.Mich.1984); *Air Devices, Inc. v. Titus Manufacturing Corp.*, 269 F.2d 837 (3d Cir. 1959).

or may be found." This section appears to be a less restrictive version of § 1391(b)(3), furthering Congressional policy favoring literary protection. Moore's Federal Practice ¶ 0.344[8] at 4236. With respect to § 1400(a), "may be found" means that venue is proper if the defendant's systematic and continuous contacts not only justify personal jurisdiction but also touch the federal district in which the action is brought.[5] If multiple defendants exist, it is not entirely clear that proper venue for one defendant will support venue for another. Moore's Federal Practice ¶ 0.344[1.–1] at 4206–4207; *Stonite Co. v. Melvin Lloyd Co.*, 315 U.S. 561, 62 S.Ct. 780, 86 L.Ed. 1026 (1942) (predecessor statute of § 1392 not applicable in patent infringement proceedings where venue determined by § 1400(b)); *Geo–Physical Maps v. Toycraft Corp.*, 162 F.Supp. at 147–8 (venue over two defendants does not create venue over a third defendant).

### 2. *The Venue in the Central District*

Venue in the Central District of California is not clear because PAR's residence and its corporate activities are difficult to pinpoint. It is difficult to determine whether systematic and continuous contacts exist between each defendant and the Central District, whether these contacts are sufficient to confer venue on the Central District, or that the contacts of one defendant will create venue against another defendant.[6]

Not only does PAR claim to be a nonoperating company, the record indicates activities in all three judicial districts in California. The record shows business being conducted out of the directors' and officers' homes, none of which are located in the Central District. (# 27 D.I. 18, Sheriff Aff., William M. Fio Rito Deposition; # 302 D.I. 11.) John Toman, the acting President for PAR, resides in the Northern District of California. (# 27 D.I. 16; # 302 D.I. 3.) Twenty days before the plaintiffs filed the lawsuit against PAR, the Delaware agent for service was instructed to direct all corporate matters to a San Diego address located in the Southern District of California. (# 27 D.I. 10 ex. 1.) At the time WDT initiated the January 16th suit against PAR, PAR was embroiled in corporate litigation in state court within the Southern District of California territory. (# 27 D.I. 13 Ex. A.)

Defendants maintain that PAR's principal place of business was in the Central District of California. Although PAR was delinquent in paying rent on this facility, the record does not show an actual eviction, lease termination, abandonment of all activities at the facility, or public utility service disconnection until September 13, 1991. (# 27 D.I. 18, September 20th affidavits of William Hearld and Joel M. Ward; # 302 D.I. 11.) Defendants further maintain that PAR conducted research and demonstrations at the Upland facility on a regular basis, that PAR generally held quarterly board meetings within the state of California, and that John Toman received his corporate mail in the Central District. (# 27 D.I. 20 Ex. A, 21, 39; # 302 D.I. 9 Ex. A, 14.)

However, the activity in the Central District is sporadic and irregular. (*Letter from Gary Aber to this Court* (Sept. 13, 1991); # 27 D.I. 16: # 302 D.I. 3.) Although the record by affidavit states that most PAR board meetings are conducted in central California, it does not indicate that

---

5. *Testa v. Janssen,* 482 F.Supp. 1195, 1197 (W.D.Pa.1980) (if nonresident corporation amenable to process, both in personam jurisdiction and venue exist); *Donner v. Tams–Witmark Music Library, Inc.,* 480 F.Supp. 1229 at 1235 (E.D.Pa.1979) (no distinction between corporations and individuals); Moore's Federal Practice ¶ 0.344[8] at 4237–4240; *Mode Art Jewelers Co. v. Expansion Jewelry Ltd.,* 409 F.Supp. 921 (S.D.N.Y.1976) (improper venue for nonresident corporation with no systematic and continuous contacts with the district); *Battle Creek Equipment Co. v. Roberts Mfg. Co.,* 460 F.Supp. 18, 21–

22 (W.D.Mich.1978) (acquired personal jurisdiction and corporation had sufficient contacts with district); *Geo–Physical Maps Inc. v. Toycraft Corp.,* 162 F.Supp. 141 (S.D.N.Y.1958) (personal service in Eastern District not meet § 1400(a) venue requirements). *Cf. Testa v. Janssen,* 482 F.Supp. at 1198 (reasonable foreseeability of contacts sufficient).

6. Assuming that § 1392 applies to § 1400(a) actions and it is not entirely clear that this assumption is permissible as a matter of law.

the meetings took place within the central federal judicial district. (# 27 D.I. 20 Ex. A, 21; # 302 9 Ex. A.) While mail addressed to John Toman as acting President of PAR was sent to the Central District, the record does not outline his visits to or contacts with the district. Defendants cite no authority that the mere receipt of mail or the lease of a facility constitutes sufficient contact with the district for venue purposes nor do they claim that this contact is more substantial than the contacts in the other judicial districts in California.

■ From the record, it is not clear that PAR's principal place of business is in the Central District. The infrequent activity may preclude sufficient contact with the district for purposes of venue under § 1391(c) and the plaintiffs do not discuss its sufficiency under § 1400(a). The only location in the record that appears to have daily activity in the Central District is counsel Ward's office and this Court doubts that this alone will confer jurisdiction. The defendants have not persuaded this court that the plaintiff had an unqualified right to bring the action in the Central District. This Court, however, need not resolve this question beyond dispute because even assuming that the plaintiff had an unqualified right to bring suit in the Central District of California, this Court finds that as a matter of discretion, a transfer to this District would not serve the efficient administration of justice.

## B. Discretionary Balancing of Interests

■ As noted *supra*, the moving defendant bears the burden of proving that the initial choice of forum must be disturbed. This Court will not grant a transfer merely because a different forum is more convenient for the defendants, *Ballard Medical Products v. Concord Laboratories, Inc.*, 700 F.Supp. at 801, or if it will simply shift the inconvenience to the other parties. *Bergman v. Brainin*, 512 F.Supp. 972, 973 (D.Del.1981). Under the facts of the present case, the Movant has not successfully carried his burden.

### 1. *Convenience to the Parties*

Courts will not blindly prefer the plaintiff's choice of forum. The forum must reflect the plaintiff's rational and legitimate concerns. *Clopay Corp. v. Newell Cos., Inc.*, 527 F.Supp. 733, 736 (D.Del. 1981). The movant's burden is easier where the plaintiff has not brought suit on its "home turf" because the interest in litigating in a convenient forum is reduced. *Pennwalt Corp. v. Purex Industries, Inc.*, 659 F.Supp. 287 (D.Del.1986). As observed by Judge Stapleton

> [W]here a plaintiff chooses to litigate away from its principal place of business, "the quantum of inconvenience to defendant needed to tip the balance strongly in favor of transfer necessarily will be less than in the case where plaintiff's choice of forum is highly convenient to plaintiff."

*Id.*, at 289 (citing *General Instrument Corp. v. Mostek Corp.*, 417 F.Supp. 821 (D.Del.1976)).

■ However, it is sufficient that the forum is near the plaintiff's principal place of business and/or that it is consistent with the plaintiff's legitimate concerns. *Id.* at 289 (Delaware qualifies as Philadelphia business' "home turf"); *Minstar, Inc. v. Laborde*, 626 F.Supp. 142 (D.Del.1985) (plaintiff's choice of forum should be connected to the plaintiff or subject matter). In other words, if the plaintiff's choice of forum relates to its legitimate, rational concerns then the plaintiff's choice of forum is still accorded substantial weight. *Bergman v. Brainin*, 512 F.Supp. at 973.

The defendants have not persuaded this Court that the Central District of California is more convenient to the parties. PAR asserts that it does not have any assets or employees in Delaware (# 27 D.I. 16, 17; # 302 D.I. 3, 6) but WDT does not have any assets or employees in the Central District of California. (# 27 D.I. 18, # 302 D.I. 11.) Both judicial districts will inconvenience one of the parties and any ruling by this Court will unavoidably disadvantage someone. The mere assertion of PAR's lack of assets in Delaware is unpersuasive.

The defendants also assert that Delaware is not WDT's home turf so its preference should be disregarded, that this forum is just as inconvenient to the plaintiff as the Central District, and that WDT will not be unduly disadvantaged by a transfer. Justice requires the complete rejection of this argument for two reasons. First, the plaintiff attempted to file suit on its "home turf" but the Southern District of New York dismissed for lack of personal jurisdiction. *Waste Distillation Technology, Inc. v. Pan American Resources, Inc.,* C.A. No. 90 Civ. 1909, 1990 WL 127544 (S.D.N.Y.1990). The plaintiff did not "choose" to litigate away from its principal place of business and should not be penalized because its "home turf" is not available. The District of Delaware appears to be the closest District with jurisdiction and selection of this forum was controlled by the plaintiff's rational and legitimate concerns. This Court believes that the District of Delaware is near enough to the plaintiff's principal place of business to give preference to the plaintiff's choice of forum.

Second, the trip to Wilmington is much more convenient to the plaintiff than the Central District, notwithstanding that they will have to travel either way, and the proper inquiry is not what will unduly disadvantage the plaintiff but rather the overall convenience to both parties. Not only have the defendants failed to prove an overall benefit to all involved by a transfer, it appears that they merely want to shift the cost and inconvenience to the plaintiffs for initiating the suit. This Court refuses to grant this request and holds that a transfer will involve more, not less, inconvenience and cost to both parties.

Plaintiff's principal place of business and executive officers are in New York. The plaintiff's President would have an approximate commute to this courthouse of 3 hours by car or 1½ hours by train. (# 27 D.I. 18; # 302 D.I. 11.) It is conceivable to commute on a daily basis to this courthouse [7] and, if a daily commute was not desired, the plaintiff would still be saved the hotel charges for the first and last day of trial due to the close proximity and efficient transportation. Defendants would have to fly across the country to reach this courthouse and, given the distance, they would need to secure lodging for both the night before and night after the last day of trial.

On the other hand, the requested transfer to Los Angeles (# 27 D.I. 16; # 302 D.I. 3) would shift the cross country trip to the plaintiff but the defendants still could not commute to the Central District of California on a daily basis. The 370–mile distance from John Toman's residence to Los Angeles will also not save the lodging expenses on either end of the trial. (# 27 D.I. 18, 39; # 302 D.I. 11, 14.) Both parties would be forced to attend trial via the air, which is more expensive than a car or train, and hotel, restaurant, and intracity transportation charges are likely to be higher in Los Angeles than in Wilmington. (# 27 D.I. 18; # 302 D.I. 11.) Considering that PAR is a "non-operating corporation with no corporate funds," it also may benefit from the lower cost in this District.

### 2. *Burden of Collecting Evidence*

This Court does not believe that the defendants have supported their conclusory contention that the "facts make it 'abundantly clear' that the Central District of California is the most convenient place for all witnesses, and for the production of the appropriate documents." (# 27 D.I. 17; # 302 D.I. 6.) Although they cite several California witnesses, the defendants fail to address the witnesses sprinkled over the United States, some from locations outside of California, due to plaintiff's allegations of worldwide illegal acts. The plaintiff states that the east coast of the United

---

7. Defendants cite *General Instrument Corp.,* 417 F.Supp. at 823 for the proposition that one cannot commute from New York to Wilmington. Since that case was decided over 15 years ago, long term daily commutes in excess of an hour have become fairly common in metropolitan areas like New York. Here, William A. Fio Rito

often travels between New York City and Wilmington within the course of a day. (# 27 D.I. 18; # 302 D.I. 11.) Moreover, the principal place of business in *General Instrument* was in Texas rather than in New York so the underlying facts are clearly distinguishable from the current case.

States is more convenient to most of these locations.

The defendants fail to prove that the witnesses in California are more important to the resolution of the issues in this case or that, in general, the California witnesses are less mobile than the witnesses outside the subpoena power of the California court. In fact, the key witness, who defendants claim to be too frail for the trip, signed an affidavit stating that he could make the trip. Of the defendants' listed essential witnesses residing in the Central District of California, two gave affidavits regarding their willingness and ability to travel and three were not involved in the engineering and promotion of technology in dispute. (# 27 D.I. 18; # 302 D.I. 11.) Of the controlling management during the time period in question, three individuals are willing to come to Delaware, one is deceased and unavailable in both districts, and one is a party to the action so his attendance can be compelled. (# 27 D.I. 18; # 302 D.I. 11.)

With respect to the witnesses that are either unable or unwilling to travel to Delaware, the defendants failed to show that live testimony is a necessity. Given the geographical diversity, the plaintiff acknowledges that deposition testimony at trial will likely be necessary. (# 27 D.I. 18; # 302 D.I. 11.) While it is true that none of the witnesses appear to reside in Delaware, the facts presented by the defendants do not tip the balance of convenience strongly in their favor.

The defendants also argue that all of PAR's documents are in California and that this fact should persuade this Court to transfer the actions. Even if this Court were to accept this statement as true, ignoring the plaintiffs contention that PAR documents are actually in Las Vegas (# 27 D.I. 17, 18; # 302 D.I. 6, 11), this Court would not be persuaded. (# 27 D.I. 18; # 302 D.I. 11.) The defendants fail to state that only PAR documents will be at issue at trial, that WDT has no pertinent docu-

mentation, or that third parties will not need to bring other documents to trial. Given the geographical spread of the evidence and the defendants' recent request for WDT documents, this Court believes that the burden of collecting the evidence from Delaware does not justify transfer.

### 3. *Interest of Justice*

The defendants unsuccessfully argue that transfer is appropriate on three different "interests of justice."[8] First, the defendants reason that neither party "does business" in Delaware but defense counsel fails to cite statutory authority or common law precedent to convince this Court of the injustice of this forum. (# 27 D.I. 17; # 302 D.I. 6.) This Court rejects the assertion that the lack of "doing business" here makes it unfair to try the case here. PAR is a Delaware Corporation, PAR directors and officers attend to corporate business here, and, as corporate citizens of Delaware, both the corporation and its management must anticipate the possibility of being hauled into court here. *See Armstrong v. Pomerance*, 423 A.2d 174 (Del. 1980) (Delaware can establish rights and responsibilities of domestic corporate management); DEL.CODE ANN. tit. 10 § 3114 (1991) (nonresident corporate directors impliedly consent to suit in Delaware under certain circumstances). This Court believes that it is fair to hold a domestic corporation accountable in this district for alleged illegal activity that has resulted in harm to another domestic corporation.

Second, the defendants urge us to look at the overall "center of gravity" and transfer both actions to that jurisdiction. (# 27 D.I. 17; # 302 D.I. 6.) This Court, however, can find no center of gravity. The alleged illegal acts did not occur solely in California, the pertinent witnesses and documents are located both inside and outside of California, and the licensing agreement, negotiated in the Southern District of California and controlled by California law, is not relevant to the alleged tortious infringe-

---

**8.** The argument that PAR corporate counsel is located in the Central District of California merits no discussion. This is not an appropriate factor to be considered under existing case law.

*Pennwalt Corp. v. Purex Industries, Inc.,* 659 F.Supp. at 290 n. 2; *Minstar, Inc. v. Laborde,* 626 F.Supp. at 146 n. 18.

ment at issue and not referred to in the prayer of the complaint. (# 27 D.I. 18; # 302 D.I. 11.) Nothing has been presented to convince this Court that this is merely a contract dispute and thus, it should be governed by any contract. The defendants' brief also fails to focus on a center of gravity within the Central District. As discussed *supra,* the defendants' contacts appear to be scattered over the entire state.

Third, defendants repeatedly emphasize that PAR is a "non-operating corporation with no corporate assets." (# 27 D.I. 16; # 302 D.I. 3.) They argue that the relative wealth of the parties mandates transfer of the actions closer to their residence and that our failure to do so will unduly harm their case. However, they fail to contradict the plaintiff's contentions that it has never sold a unit, that it is not a "well-heeled" corporation, and that the defendants frequently travel outside California in the course of PAR business. (# 27 D.I. 18; # 302 D.I. 11.) Moreover, defendants fail to persuade this Court that the litigation costs are likely to be greater in Delaware and, in fact, such costs may actually be lower as discussed *supra.* The Delaware docket is also likely not as congested as the Central District of California, facilitating faster decisions. In the long run, a transfer may actually deplete fewer assets from both parties.[9]

IV. *Conclusion*

This Court holds that consolidation of the two pending actions, WDT's suit against PAR and PAR's acting President is appropriate to conserve judicial resources. This Court further holds, in its discretion, that a transfer is not warranted under the facts and circumstances of the pending cases. A transfer would deprive the plaintiff of its choice of forum without reducing the cost and inconvenience to the parties. The defendants have failed to persuade this Court that the transfer is in the interest of justice. Furthermore, this Court could proceed in this district without any additional

jurisdictional litigation. It is not entirely clear that the jurisdictional issues are free from additional litigation should the cases be transferred to another district.

Accordingly, an order GRANTING the motion to consolidate and DENYING the motion to transfer will be entered.

---

**9.** The mere fact that PAR is a "non-operating fund" cuts against them. Should questions arise requiring employee testimony, the plaintiff corporation is operational and employee absence would be much more detrimental to plaintiff than to defendant.