ICON INDUSTRIAL CONTROLS
CORPORATION

v.

CIMETRIX, INC., et al.

Civil Action No. 95–1669.

United States District Court,
W.D. Louisiana,
Shreveport Division.

April 5, 1996.

Russell Oliver Brabham, Shreveport, LA, for plaintiff Icon Industrial Controls Corp.

Glenn L. Langley, Cook Yancey King & Galloway P.C., Shreveport, LA, Keith A. Kelly, Ray Quinney & Nebeker, Salt Lake City, UT, for defendant Cimetrix Inc.

Isaac Berneman, Berneman & Berneman, Van Nuys, CA, for defendant Delta Tau Inc.

J. David Garrett, Blanchard Walker O'Quin & Roberts, Shreveport, LA, Eugene H. Bramhall, H. Hal Visick, Office of the General Counsel, Provo, UT, for defendant Brigham Young University.

### MEMORANDUM RULING

PAYNE, United States Magistrate Judge.

### I. OVERVIEW

This antitrust action brought by Icon Industrial Controls Corporation ("ICON") raises intriguing issues of personal jurisdiction and venue. It is not seriously contended that any of the defendants, Cimetrix, Inc. ("Cimetrix"), American Robot Corporation ("ARC"), Delta Tau Data Systems, Inc. ("Delta") and Brigham Young University ("BYU")—all foreign corporations—have significant contacts with Louisiana. It is also apparent that few, if any, of the events giving rise to this dispute occurred in this state. In response to the defendants' motions to dismiss for lack of personal jurisdiction and improper venue, however, plaintiff ICON, a Louisiana corporation whose principal place of business is located in Shreveport, Louisiana, contends that personal jurisdiction and venue are present in this district, as well as in each and every other judicial district in the United States, through a combined application 15 U.S.C. § 22 (Section 12 of the Clayton Act) and the general venue provisions of 28 U.S.C. § 1391(c).

For the reasons which follow, the court concludes that ICON's position with respect to personal jurisdiction and venue is correct: this action literally may be brought in *any* judicial district. The worldwide service of process provision contained in Section 12 of the Clayton Act permits the exercise of personal jurisdiction anywhere in the country, and the existence of personal jurisdiction makes venue appropriate in any district under 28 U.S.C. § 1391(c). The result seems to depart from the traditional notion that the district where an action is litigated, if not a district where any defendant resides, should have some connection to the events giving rise to the underlying controversy. Nevertheless, ICON's position is supported both by the wording of the referenced statutes and by the pertinent jurisprudence. Accordingly, the defendants' motions to dismiss for lack of personal jurisdiction and/or improper venue are denied.

Defendants BYU and Cimetrix alternatively seek a transfer of the action to the United States District Court for the District of Utah. They rely on 28 U.S.C. § 1404(a), which provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." Having requested supplemental briefing on the § 1404(a) issue, the court concludes that the moving defendants have not made the showing necessary to warrant a transfer. Therefore, the motions to transfer are also denied.

### II. PERTINENT FACTS

In its first amended complaint, ICON describes the factual basis of its claims as follows:

10.

Plaintiff and defendants are competitors in the sale of operating systems to control robotics and machine tools. They also compete in the research and development of new technology of computer operating systems to control robotics and machine tools.

11.

Defendants have entered into a contract, combination or conspiracy with each other to stop or slow ICON's development and sale of a new open architecture computer operating system to control robotics and machine tools.

**12.**

As part of the contract, combination or conspiracy, defendants have knowingly disseminated false information about the new open architecture computer operating system to control robotics and machine tools being developed by ICON. Furthermore, as part of the contract, combination or conspiracy, the defendants have told at least one potential purchaser and collaborator that entering into any relationship with ICON would be unethical.

**13.**

As a result of defendants' contract, combination or conspiracy, ICON's employees have had to expend large numbers of hours and money responding to the false information disseminated by the defendants. Furthermore, upon information and belief, collaborators who ICON has identified as being necessary to the long-term financial success of the project have refused to be involved in the development of the new open architecture computer system to control robotics and machine tools.

**14.**

Defendants' purpose in acting together clearly is to injure competition and to crush ICON. To the extent that research and development is stymied, consumers and competition lose.

Based on these allegations, ICON asserts a federal antitrust claim under Section One of the Sherman Act, as well as state law claims for unfair trade practices (La.R.S. 51:1401), antitrust violations (R.S. 51:122), "injurious falsehood," and "abuse of rights." ·

ICON does not allege in any detail where the defendants engaged in the alleged wrongful conduct. The court infers from ICON's silence as to that issue in its memorandum in opposition to the pending motions that, with one possible exception, it is not ICON's position that any acts taken in furtherance of the "contract, combination or conspiracy" occurred in Louisiana.[1] All moving defendants deny that they have undertaken any significant activity in Louisiana of any kind.

BYU is a Utah nonprofit corporation with campuses at Provo, Utah and Laie, Hawaii. Cimetrix is a Nevada corporation which maintains its principal place of business in Provo, Utah. Delta is a California corporation, and ARC is domiciled in Pennsylvania. In support of their pending motions, BYU, Cimetrix and Delta have submitted affidavits indicating that they do not transact business in Louisiana, own property in Louisiana or otherwise have any significant contacts with this state.[2] Plaintiff has presented no evidence to the contrary.

### III. LAW AND ANALYSIS

**(A)** *Personal Jurisdiction*

Consideration of the issues presented by the defendants' motions brings to mind the insoluble question of whether the chicken or the egg comes first. Seemingly it is proper to first determine whether there is personal jurisdiction over the defendants in Louisiana, and then to move to the narrower question of whether the Western District of Louisiana is an appropriate venue under the applicable federal statutes. In this case, however, the two issues are not easily separated, largely because the asserted basis for

---

**1.** The exception was an allegation in the original complaint, now superseded, that the defendants "acted in concert to solicit and secure newspaper articles in, among others, the Philadelphia Inquirer and the Shreveport (Louisiana) Times which criticize Plaintiff's existing business agreement with the United States...." No details were alleged regarding the alleged solicitation of the Louisiana newspaper. ICON does argue in its opposition brief that the actions of the defendants had a foreseeable impact in Louisiana, i.e., damage to ICON.

**2.** ARC has not yet filed a motion to dismiss, apparently because it has been involved in settlement negotiations with plaintiff and is attempting to avoid unnecessary litigation expenses. It has represented in its motions for extension of time to plead, however, that it contests personal jurisdiction in Louisiana. Trellis Software and Controls, Inc. ("Trellis") was originally a defendant, but recently settled with the plaintiff and was dismissed. Trellis is domiciled in Michigan. Prior to dismissal, Trellis filed a motion to dismiss for lack of personal jurisdiction in which it asserted that it has no contacts with Louisiana.

personal jurisdiction is contained within a statute that provides special venue and service of process rules for antitrust actions. Suffice it to say that the starting point for analysis of both issues is that statute, Section 12 of the Clayton Act (15 U.S.C. § 22), which provides:

> Any suit, action or proceeding under the antitrust laws against a corporation may be brought not only in the judicial district whereof it is an inhabitant, but also in any district wherein it may be found or transacts business; and all process in such cases may be served in the district of which it is an inhabitant, or wherever it may be found.

The parties offer two conflicting interpretations of Section 12. The plaintiff's position is that the authorization of service of process "wherever a defendant may be found" applies to "[a]ny suit, action or proceeding under the antitrust laws against a corporation," including, of course, this case. If the plaintiff's position is correct, then this case would be governed by the jurisprudential rule, adopted by the Fifth Circuit and a number of other federal courts of appeals, that when a federal statute provides for worldwide service of process, there is personal jurisdiction in every judicial district in the nation over any defendant served pursuant to that provision, as long as that defendant has minimum contacts with the United States. In such cases, it is not necessary for the plaintiff to show that the defendant has minimum contacts with the forum state under traditional *International Shoe* analysis. *Busch v. Buchman, Buchman & O'Brien, Law Firm*, 11 F.3d 1255, 1258 (5th Cir.1994) ("when a federal court is attempting to exercise personal jurisdiction

over a defendant in a suit based on worldwide service of process, the relevant inquiry is whether the defendant has had minimum contacts with the United States").[3] As it is not disputed that all of the defendants have minimum contacts with the United States, plaintiff's interpretation of the statute requires a finding that those defendants are subject to personal jurisdiction in this and every other judicial district in the United States.

The defendants, on the other hand, contend that the worldwide service of process provision in Section 12 does not apply to all antitrust cases, but only to those antitrust cases where the special venue provisions set forth in the first clause of Section 12 are met. Thus, they argue that the term "such cases," which prefaces the provision regarding service of process, refers only to antitrust actions brought in a judicial district where the defendant "is an inhabitant," or "wherein it may be found or transacts business."[4] Contending that these special venue requirements are not satisfied as to the corporate defendants in this case (a proposition not seriously contested by ICON), defendants urge that the provision for worldwide service of process (as well as the corollary rule that personal jurisdiction is present for the defendants as long as they have minimum contacts with the United States) is inapplicable. In their view, the case therefore must be governed by the traditional *International Shoe* inquiry of whether the defendants have sufficient minimum contacts with the forum state to allow for the exercise of personal jurisdiction. Under that test, they argue, they should prevail on the jurisdictional issue given the absence of any significant contacts

---

**3.** *Accord: United Liberty Life Ins. Co. v. Ryan*, 985 F.2d 1320, 1330 (6th Cir.1993); *United Electrical, Radio & Machine Workers of Am. v. 163 Pleasant St. Corp.*, 960 F.2d 1080 (1st Cir.1992); *Go–Video, Inc. v. Akai Elec. Co., Ltd*, 885 F.2d 1406, 1414–16 (9th Cir.1989); *Delong Equip. Co. v. Washington Mills Abrasive*, 840 F.2d 843, 848 (11th Cir.1988), *cert. denied*, 494 U.S. 1081, 110 S.Ct. 1813, 108 L.Ed.2d 943 (1990); *Lisak v. Mercantile Bancorp, Inc.*, 834 F.2d 668, 671–72 (7th Cir.1987), *cert. denied*, 485 U.S. 1007, 108 S.Ct. 1472, 99 L.Ed.2d 700 (1988); *Miller Pipeline Corp. v. British Gas plc*, 901 F.Supp. 1416, 1420 (S.D.Ind.1995); *Kingsepp v. Wesleyan University*, 763 F.Supp. 22, 24 (S.D.N.Y.1991); *En-

tek Corp. v. Southwest Pipe & Supply Co.*, 683 F.Supp. 1092, 1099 (N.D.Tex.1988).

**4.** For the purposes of Section 12, being an "inhabitant" means incorporated under the laws of that jurisdiction. *Aro Manufacturing Co. v. Automobile Body Research Corp.*, 352 F.2d 400, 404 (1st Cir.1965), *cert. denied*, 383 U.S. 947, 86 S.Ct. 1199, 16 L.Ed.2d 210 (1966). "Being 'found' within a district is generally equated with 'doing business' there, and requires greater contacts than does 'transacting business.'" *General Elec. Co. v. Bucyrus–Erie Co.*, 550 F.Supp. 1037, 1041 (S.D.N.Y.1982).

between any of the named defendants and the State of Louisiana.[5]

A virtually identical debate over the proper interpretation of Section 12 was presented to the Ninth Circuit in *Go–Video, Inc. v. Akai Elec. Co., Ltd.,* 885 F.2d 1406 (1989). In a thorough and well reasoned opinion, the Ninth Circuit concluded that the statute's worldwide service provision applies in all antitrust cases (the interpretation urged by the plaintiff in this case). As the case is directly on point as to the issue of statutory construction presented in this case, we review in detail the approach to the issue utilized by the *Go–Video* court.

The Ninth Circuit first considered whether the venue provisions contained in Section 12 were intended to provide exclusive venue in antitrust actions, or whether those rules are supplemented by federal venue laws of general application. The import of this issue is that if section 12 provides exclusive rules of venue, then the worldwide service provision necessarily applies only when those rules are met, and the defendants carry the issue without need for further analysis. On the other hand, if Section 12's venue rules are non-exclusive, it is then necessary to consider whether its service provision applies when other venue rules are applicable.

Relying on the well established rule that special venue statutes ordinarily do not preempt general venue rules in the absence of some indication that Congress intended the special rules to be exclusive, *see Pure Oil v. Suarez,* 384 U.S. 202, 86 S.Ct. 1394, 16 L.Ed.2d 474 (1966), the court concluded that in order to hold that section 12 provides exclusive venue:

> there must be something either in Clayton Act § 12, or merely the act of serving process pursuant to that section, which renders its venue provision exclusive and precludes the application of any other federal venue statute. 885 F.2d, at 1410.

Reviewing the legislative history of Section 12, the court could not find that "something" indicative of exclusivity. Instead, all pertinent legislative history pointed to the conclusion that the primary reason Congress enacted Section 12 was to broaden the potential range of venue and service options in antitrust cases. *Id.* at 1410–13. The court accordingly concluded that the venue provisions in section 12 are supplemented by the general venue statutes.

Having reached that conclusion, the court next considered whether there was any basis for holding that the worldwide service provision applies only to the special rules of venue set forth in Section 12, and does not apply when venue in an antitrust case is based on the general venue rules. The court found no support for that proposition in the legislative history:

> It was the Senate, in its consideration of the bill that became the Clayton Act, that added the service of process provision. The provision apparently was added without debate or objection, with no indication that it was intended to relate, let alone be subject, to the section's venue provision. From this sparse history, we certainly cannot conclude that Congress affirmatively *intended* that section 12's service of process provision would be limited by the venue provision which, apparently as a matter of happenstance or convenience, preceded it in the text of the legislation ultimately enacted. *Id.* at 1410 (citations omitted; emphasis by the court).

The court then considered the meaning of the terminology "process in such cases" in the final clause of Section 12. Does "such cases" modify only the clause "[a]ny suit, action or proceeding under the antitrust laws against a corporation" (the first twelve words of section 12), or does it also encompass the special venue provisions that follow that clause? The Ninth Circuit concluded that:

---

5. Some of the defendants also do not concede the correctness of the appellate decisions holding that when a federal statute provides for nation-wide service, it is not necessary to show that the defendant has minimum contacts with the forum. It is true that the Supreme Court has not yet spoken to the issue, and it has been argued that allowing a defendant to be sued in any district merely because it has minimum contacts with the United States is a violation of due process. *Busch, supra,* 11 F.3d., at 1258–1260 (Garza, J., dissenting). However, unless and until the Supreme Court says differently or the Fifth Circuit reconsiders the issue, the majority opinion rendered in *Busch* is controlling precedent.

Under the canon *reddendo singula singulis*, we interpret a passage in which antecedents and consequents are unclear by reference to the context and purpose of the statute as a whole. Looking to the text of Section 12, the construction ... urged by [plaintiff] Go–Video here, is clearly the one more consonant with the purpose of the Clayton Act and better comports with a section designed to expand the reach of the antitrust laws and make it easier for plaintiffs to sue for antitrust violations. 885 F.2d, at 1412–13.

This court agrees with the Ninth Circuit's conclusion in *Go–Video* that there is no indication in the legislative history that Congress intended to restrict the availability of worldwide service of process to those cases governed by the special venue rules contained in Section 12. Nor is such a result compelled by the wording of the statute. The most reasonable construction of the statute is that the phrase "process in such cases" refers to "[a]ny suit, action or proceeding under the antitrust laws against a corporation." This is also the conclusion reached by Judge Stewart of the Southern District of New York after a thorough consideration of the issue in *General Elec. Co. v. Bucyrus–Erie Co.*, 550 F.Supp. 1037 (1982).

The defendants raise numerous objections to the *Go–Video* result. First, they argue that *Go–Video* is distinguishable because it involved alien defendants and the application of 28 U.S.C. § 1391(d), which provides that "[a]n alien may be sued in any district." While it is true that § 1391(d) provided a basis for venue in *Go–Video* that is not applicable in this case, the *Go–Video* court nonetheless confronted the precise issue presented here: whether the worldwide service provision in Section 12 applies in all antitrust cases, or only in those cases where the special venue provisions contained in Section 12 are satisfied. Logically, the court's conclusion that the worldwide service provision is available in *all* antitrust cases is not dependent on whether the defendant is an alien.

Nor is there any language in *Go–Video* which suggests that § 1391(d) is the *only* statutory rule of venue that supplements the venue rules provided by Section 12, and that the other general rules of venue, including § 1391(c) (the rule relied upon by the plaintiffs in this case), are not applicable to antitrust cases. It is true that the venue provision for aliens contained in § 1391(d) has a unique status, in that it supplements even those special venue provisions that are otherwise considered exclusive. *Brunette Machine Works, Ltd. v. Kockum Industries, Inc.*, 406 U.S. 706, 92 S.Ct. 1936, 32 L.Ed.2d 428 (1972); *Bucyrus–Erie Co., supra*, 550 F.Supp. at 1037. Even so, as discussed above, there is no basis for concluding that Section 12 is intended to preempt *any* of the general rules of venue. That conclusion is buttressed by Judge Stewart's learned discussion in *Bucyrus–Erie* of the fact that the legislative history of Section 12 reveals neither of the traditional factors associated with exclusive venue provisions. 550 F.Supp., at 1039–41.[6]

Citing certain language in *Busch v. Buchman, et al., supra*, defendants also argue that the Fifth Circuit would reach a different result on this issue.[7] *Busch* was a securities fraud action that addressed the application of the worldwide service provision contained in 15 U.S.C. § 78aa, which provides in pertinent part that:

> Any suit or action to enforce any liability or duty created by this chapter ... may be brought in any such district or in the district wherein the defendant is found or is an inhabitant or transacts business, and process in such cases may be served in any other district of which the defendant is an

---

**6.** The two factors indicative of exclusivity are (1) "evidence of concurrent congressional action on both the special venue provision and the general venue provision from which it could be inferred Congress meant the two statutes to stand separately," and (2) "evidence of an original congressional intent behind the enactment of the special venue provision that venue ... be restrictive." *Bucyrus–Erie*, 550 F.Supp., at 1039, *citing Four-*

*co Glass Co. v. Transmirra Products Corp.*, 353 U.S. 222, 77 S.Ct. 787, 1 L.Ed.2d 786 (1957).

**7.** Defendants also argue that *Go–Video*'s interpretation of Section 12 renders meaningless the special venue provisions contained in that statute. This argument is addressed in the section on venue, *infra*.

inhabitant or wherever the defendant may be found....

In discussing the constitutionality of this worldwide service provision, the *Busch* court stated that:

> Once a case is filed in an appropriate district under § 78aa, the statute gives the district court the authority to serve defendants nationwide. 11 F.3d, at 1257 (emphasis added).

The defendants argue that this sentence in *Busch* reflects the Fifth Circuit's view, when interpreting a statute worded similarly to Section 12, that the availability of the worldwide service provision is contingent upon satisfying the special venue requirements contained in the same statute. However, the cited language is dictum, since *Busch* did not address the issue of whether worldwide service is available when general venue rules apply. Furthermore, the referenced passage does not state, or even imply, that worldwide service would be unavailable if venue were premised on same basis other than § 78aa. It merely states that when venue is premised on § 78aa, the vehicle of worldwide service is available. In summary, defendants read too much into the referenced sentence; *Busch* simply does not speak to the issue presented in this case.

Defendants also rely on *Goldlawr, Inc. v. Heiman*, 288 F.2d 579, 581 (2d Cir.1961), *rev'd on other grounds*, 369 U.S. 463, 82 S.Ct. 913, 8 L.Ed.2d 39 (1962), wherein the Second Circuit stated, incidental to concluding that a transferor court lacked personal jurisdiction over the defendants, that "the extraterritorial service privilege [of section 12] is given only when the other [venue] requirements are satisfied." The *Go–Video* court characterized the quoted statement as dictum. 885 F.2d, at 1411. However, even if *Goldlawr*'s determination that extraterritorial service was available only when the venue requirements of Section 12 were met is not dictum, this decision was issued in 1961, at a time when the general venue provisions for domestic corporations contained in 28 U.S.C. § 1391(c) were *more restrictive* than Section 12. Thus, the court had no occasion to consider whether the worldwide service provision in Section 12 could apply if grounds for venue were provided by another statute. For that reason, in *Bucyrus–Erie, supra*, the district court distinguished *Goldlawr* and held that the worldwide service provision is applicable even if venue is provided by a statute other than Section 12. 550 F.Supp., at 1041–42. *Bucyrus–Erie* read *Goldlawr* merely "as requiring that *some* applicable venue statute must be met before section 12's service and personal jurisdiction clause may be invoked...." *Id.* at 1042.[8]

There are district court decisions which support defendants' interpretation of Section 12. *See Michelson v. Merrill Lynch, Pierce, Fenner & Smith*, 709 F.Supp. 1279 (S.D.N.Y. 1989) (discussed in footnote 8); *Gault v. Foster*, No. 83–1688 (N.D.Ill. Sept. 14, 1984).[9] Legal commentators have also expressed

---

**8.** In *Michelson v. Merrill Lynch, Pierce, Fenner & Smith*, 709 F.Supp. 1279, 1286 (S.D.N.Y.1989), the district court concluded that *Goldlawr* is binding precedent in the Second Circuit for the proposition that Section 12's service of process provision is only available if the venue provisions of that statute are satisfied. Interestingly, the *Michelson* court acknowledged that *Bucyrus–Erie* had concluded differently, and characterized the holding of that case as "compelling." The intra-district conflict between *Bucyrus–Erie* and *Michelson* has not yet been addressed by the Second Circuit.

**9.** In its reply brief, Cimetrix cites a number of district court cases which recite the proposition that Section 12's service provision is contingent upon satisfying the venue requirements contained in that statute. *Chrysler Corp. v. General Motors Corp.*, 589 F.Supp. 1182, 1195 (D.D.C. 1984); *Call Carl, Inc. v. BP Oil Corp.*, 391

F.Supp. 367, 378 (D.Md.1975), *aff'd in part, rev'd in part on other grounds*, 554 F.2d 623 (4th Cir.1977), *cert. denied*, 434 U.S. 923, 98 S.Ct. 400, 54 L.Ed.2d 280 (1977); *Friends of Animals, Inc. v. American Veterinary Ass'n*, 310 F.Supp. 620, 624 (S.D.N.Y.1970); *Public Service Co. of New Mexico v. Federal Pacific Electric Co*, 210 F.Supp. 1, 4 (D.N.M.1962). These cases have little weight for the same reason noted in the text concerning *Goldlawr*; they do not consider the issue of whether worldwide service is available when venue is based on statutes of general application. One reason these cases had no occasion to address that issue is that they were all decided prior to 1988, when the general venue provision for domestic corporations, 28 U.S.C. § 1391(c) was more restrictive than Section 12. *See Bucyrus–Erie*, 550 F.Supp., at 1041 n. 6 (distinguishing *Friends of Animals, Inc.* and similar district court cases).

mixed views on the issue. *See, e.g.,* Von Kalinowski, 10 *Antitrust Laws and Trade Regulation,* § 104.03[2] at 104–8 (1988) (citing favorably cases which hold that "in such cases" refers to antitrust actions generally); Cassad, "Personal Jurisdiction in Federal Question Cases," 72 Tex.L.Rev. 1589, 1611–12 (1992) (arguing that use of worldwide service of process provision in conjunction with general venue statutes creates "anomalous" result). As reasonable arguments can be made on both sides of the issue, it is not surprising that there is some conflicting authority. Nevertheless, this court follows the reasoning employed by the Ninth Circuit in *Go–Video,* the only court of appeals decision cited by the parties which definitively addresses the issue. Unlike other decisions which merely give passing reference to the question, *Go–Video* recognized the import of the issue in the context of the policies underlying the Clayton Act, including the fact that the Act's special venue and service provisions are "designed to expand the reach of the antitrust laws and make it easier for plaintiffs to sue for antitrust violations." 885 F.2d, at 1413.

Furthermore, in order to reach the result urged by the defendants, the court would necessarily have to conclude either (1) that the venue rules contained in Section 12 are exclusive for antitrust actions; or (2) that Section 12's venue provisions are not exclusive, but that its provision for service of process exclusively applies to those non-exclusive venue provisions. The former conclusion would be against the great weight of jurisprudential authority, and the latter conclusion makes little sense.

In summary, the provision for worldwide service of process contained in Section 12 of the Clayton Act applies in this case. Therefore, all of the defendants are subject to the personal jurisdiction of this court. Accordingly, the defendants' motions to dismiss for lack of personal jurisdiction are denied.[10]

(B) *Venue*

■ ICON contends that venue is proper in this district pursuant to 28 U.S.C.

§ 1391(b) & (c). § 1391(b) provides, in pertinent part, that venue is proper in a federal question case "in a judicial district where any defendant resides, if all defendants reside in the same State." § 1391(c) provides that "a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced." Because all of the corporate defendants are subject to personal jurisdiction in Louisiana (by virtue of their amenability to worldwide service of process under Section 12 of the Clayton Act), ICON argues that they all "reside" in Louisiana for venue purposes under § 1391(b).

Having already determined that the defendants are subject to personal jurisdiction in Louisiana, and that the venue provisions of Section 12 of the Clayton Act are not exclusive, the court agrees that § 1391(c) provides a basis for venue. It was clearly the intention of Congress, when it amended § 1391 in 1988, to provide that if all corporate defendants are subject to personal jurisdiction in the forum, and there are no individual defendants who reside elsewhere, venue is automatically established. "The 1988 amendment to § 1391(c) ... now provides that a corporate defendant's residence, for venue purposes, is equivalent to whether a corporation is amenable to service of process *i.e.,* subject to personal jurisdiction." 1A Moore's Federal Practice para. 342 at 4111. *See also Kingsepp v. Wesleyan University, supra,* 763 F.Supp., at 28; *McCracken v. Automobile Club of Southern California, Inc.,* 891 F.Supp. 559 (D.Kan.1995); *Obee v. Teleshare, Inc.,* 725 F.Supp. 913, 915 (E.D.Mich.1989).

Defendants point out that application of the general venue provisions contained in § 1391(b) & (c) in conjunction with the nationwide service of process provision in Section 12 renders unnecessary the special venue provisions contained in Section 12. They argue against such an application on the premise that Congress presumably intended the venue provisions contained in Section 12 to have meaning. This argument overlooks

---

**10.** Having reached this conclusion, the court has no occasion to address ICON's alternative contention that the defendants are subject to personal jurisdiction in this district under *International Shoe* analysis because their actions caused foreseeable injury to ICON in Louisiana.

the fact that Section 12 was enacted in 1914, decades before Congress expanded the general venue provisions through the 1988 amendments. Thus, at the time Section 12 was enacted, the special venue provisions contained therein served a very definite purpose. It may well be that the 1988 amendments made those provisions "wholly redundant," see Go–Video, 885 F.2d, at 1413, citing 15 Wright & Miller, § 3818 at 110, but if so, such was the prerogative of Congress.

The defendants also emphasize the seeming inequity, from their perspective, of a result which allows antitrust plaintiffs to obtain personal jurisdiction and venue over corporate defendants in any district in the United States. However, that is a policy issue best settled in the legislative arena. Had it desired to do so, Congress surely could have prevented this result in 1988 by providing that § 1391(c), as amended, did not apply to antitrust actions. And if even Congress did not then consider the impact that the amendment would have on antitrust cases brought against corporate defendants, it is of course at liberty to restrict antitrust venue through new legislation, if desired. In the meantime, there are safeguards against the filing and prosecution of an antitrust action in a district which has no meaningful connection to the location of the parties or the underlying controversy, including the doctrine of forum non conveniens and the right to seek a change of venue for the convenience of parties and witnesses under 28 U.S.C. § 1404(a). We now turn to the alternative contention of defendants BYU and Cimetrix that § 1404(a) should be applied in this case.

### (3) Transfer of Venue

Section 1404(a) states that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district court or division where it might have been brought." BYU and Cimetrix, both Utah corporations, urge that this action should be transferred to the United States District Court for the District of Utah pursuant to this provision. The remaining defendants, Delta (California) and ARC (Pennsylvania) do not oppose a transfer, but reserve their rights to challenge the jurisdiction of the Utah court.

Clearly this action "might have been brought" in Utah, because, as previously determined, all of the defendants are subject to personal jurisdiction and venue in every district court in the United States. The question is whether a transfer to Utah is required by interests of convenience. While a lesser showing is required to obtain a § 1404(a) transfer than is necessary to achieve forum non conveniens ("FNC") dismissal, the moving defendants acknowledge that it is their burden to prove that the balance is strongly in favor of the Utah forum as more convenient. Davidson v. Exxon Corp., 778 F.Supp. 909, 911 (E.D.La.1991); AT & T v. MCI Communications Corp., 736 F.Supp. 1294, 1306 (D.N.J.1990); Lee v. Hunt, 431 F.Supp. 371, 380 (W.D.La.1977). See also Schieffelin & Co. v. Jack Co. of Boca, Inc., 725 F.Supp. 1314, 1321 (S.D.N.Y.1989) ("The moving party must make a clear-cut showing that transfer is in the best interests of the litigation.")

The factors to be considered in a § 1404(a) inquiry are the same as the FNC factors set forth in Gulf Oil Co. v. Gilbert, 330 U.S. 501, 508, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947):

(1) convenience of the witnesses (including cost to attend trial and availability of compulsory process);

(2) convenience to the parties (relative ease of access to proof, location of exhibits, possibility of viewing premises, enforceability of a judgment and possibility that plaintiff is harassing defendants by selecting inconvenient forum);

(3) public interests (congestion of court docket; whether jury duty should be imposed on citizens for cases arising outside their docket; desirability of settling local questions locally, and whether the court is familiar with the law that governs the case).

Of these categories, the convenience of witnesses is most important. Southern Investors II v. Commuter Aircraft Corp., 520 F.Supp. 212, 218 (M.D.La.1981).

A plaintiff's choice of forum is generally entitled to considerable deference. *Peteet v. Dow Chem. Co.*, 868 F.2d 1428, 1436 (5th Cir.), *cert. denied*, 493 U.S. 935, 110 S.Ct. 328, 107 L.Ed.2d 318 (1989); *Schexnider v. McDermott International, Inc.*, 817 F.2d 1159, 1163 (5th Cir.), *cert. denied*, 484 U.S. 977, 108 S.Ct. 488, 98 L.Ed.2d 486 (1987). However, such deference is lessened when the operative facts of the dispute occur outside plaintiff's chosen forum. *AT & T, supra*, 736 F.Supp., at 1306.

■ Applying these general principles to the present controversy, we begin by dispensing with the factors listed under "convenience to the parties" and "public interest." Those factors are largely inconsequential in this case. While the defendants contend that many documents and other exhibits to be used at trial are located in Utah, that factor, standing alone, is not a persuasive reason for transfer. The critical inquiry, and by far the major focus of the briefs and affidavits submitted by the parties on the transfer issue, is the convenience of the witnesses.

BYU submits that it may call the following witnesses at trial: officers, directors and employees of Cimetrix and BYU, all of whom reside in Utah; members of the Utah congressional delegation; and employees of the remaining defendants, Delta (California) and ARC (Pennsylvania).

Cimetrix asserts that it may call the following witnesses: at least three officers or employees of Cimetrix, all of whom are located at its Provo, Utah headquarters; the former CEO of Cimetrix, who now resides in Los Angeles, California; a director of Cimetrix who resides in Albuquerque, New Mexico; staff members of the Utah office of Senator Orrin Hatch, located in Salt Lake City, Utah; staff members of national laboratories located in Livermore, California, Los Alamos, New Mexico and Albuquerque, New Mexico and newspaper reporters located in Salt Lake City, Utah. Cimetrix has also submitted evidence indicating that it would be less expensive and time consuming for all of the foregoing witnesses to travel to a trial in Salt Lake City, Utah than Shreveport, Louisiana.

ICON represents that it may call the following witnesses at trial: two ICON officers who live and work in Shreveport, Louisiana; two employees of Lawrence Livermore National Laboratory in Livermore, California who make at least one trip a month to Shreveport in order to perform work at ICON's facility; a reporter for the Shreveport Times; a representative of Trellis, from Michigan; a representative of ARC from Pennsylvania; two reporters for the Philadelphia Inquirer; an employee of Robotics World Magazine, which is based in Atlanta, Georgia; an employee of General Motors–Hughes Division in Michigan; an employee of Oak Ridge National Laboratory in Tennessee; and an employee of Pratt & Whitney of Palm Beach, Florida. ICON asserts that this forum is more convenient than Utah not only for its own employees, but also for the other out-of-state witnesses that it may call at trial.

On the showing made, this court cannot conclude that convenience factors "strongly favor" Utah. As witnesses may be called from at least nine states and from almost every region of the country, there is no single forum which will be convenient to all witnesses. No doubt a Utah trial would be more convenient to BYU and Cimetrix, since most of their witnesses reside in Utah or other western states, just as a trial in Louisiana would be more convenient for ICON. As for the remaining defendants, a Utah trial would be more convenient for Delta's witnesses, whereas either Louisiana or Utah would require significant travel for ARC's witnesses. However, even if all of the defendants were domiciled in Utah (which may soon be the case, as it has been represented to the court that settlement between plaintiff and ARC is imminent, and settlement negotiations between plaintiff and Delta are ongoing), "[m]erely shifting the inconvenience from one side to the other ... obviously is not a permissible justification for a change of venue." *Scheidt v. Klein*, 956 F.2d 963, 966 (10th Cir.1992). *See also Waste Distillation Technology, Inc. v. Pan American Resources, Inc.*, 775 F.Supp. 759, 764 (D.Del. 1991); *Clark v. Moran Towing & Transp. Co.*, 738 F.Supp. 1023, 1031 (E.D.La.1990); *Southern Investors II v. Commuter Aircraft Corp.*, 520 F.Supp. 212, 219 (M.D.La.1981).

There is authority for the proposition that the defendants' § 1404(a) burden is "especially heavy" in antitrust suits because the plaintiff's choice of forum is entitled to particular respect. *Expoconsul Intern., Inc. v. A/E Systems, Inc.,* 711 F.Supp. 730, 735 (S.D.N.Y.1989); *Star Lines, Ltd. v. Puerto Rico Maritime Shipping Authority,* 442 F.Supp. 1201, 1207 (S.D.N.Y.1978). The court finds it unnecessary to apply that rule in this case. Indeed, even if plaintiff's choice of forum were given minimal deference due to the fact that the events giving rise to the controversy occurred elsewhere, *AT & T, supra,* the defendants still have not made the "clear cut" showing necessary under § 1404(a).

\* \* \*

The court has received the benefit of excellent briefs from the parties on the various issues raised by the defendants' motions. For the reasons stated, the motion of defendant Brigham Young University to dismiss for lack of jurisdiction, or alternatively to transfer the case is **DENIED;** the motion of defendant Cimetrix, Inc. to dismiss for lack of venue, improper jurisdiction and service of process, or alternatively to transfer case is **DENIED;** and the motion of defendant Delta Tau, Inc. to dismiss pursuant to FRCP 12(b)(2) & (5) is **DENIED.** The motion of Trellis Software to dismiss for lack of jurisdiction is moot due to the stipulated dismissal of that defendant.[11]

---

[11]. As none of the motions before the court are excepted in 28 U.S.C. § 636(b)(1)(A), nor dispositive of any claim on the merits within the meaning of Rule 72 of the Federal Rules of Civil Procedure, this ruling is issued under the authority thereof, and in accordance with the standing order of this court. Any appeal must be made to the district judge in accordance with Rule 72(a) and U.L.L.R. 19.09(a).