**FIRST BANK OF MARIETTA, Plaintiff,**

v.

**BRIGHT BANC SAVINGS ASSOCIATION, Defendant.**

**No. C–2–86–759.**

United States District Court, S.D. Ohio, E.D.

Jan. 26, 1988.

Mark S. Miller, Columbus, Ohio, for plaintiff.

William Wilkinson, Columbus, Ohio, for defendant.

## MEMORANDUM AND ORDER

GRAHAM, District Judge.

This matter is before the Court on the defendant's motion to dismiss for lack of personal jurisdiction or, in the alternative, to transfer venue of this action to the United States District Court, Northern District of Texas, Dallas Division. For the reasons which follow, the Court has determined that the defendant's motion is DENIED with respect to jurisdiction but GRANTED with respect to VENUE.

### I. FACTS

The facts significant for the purposes of this motion are not in dispute. There is, however, a dispute of whether the uncontroverted facts establish *in personam* jurisdiction over the defendant. For the purposes of this motion the facts as alleged by the plaintiff will be assumed to be true.

The plaintiff, First Bank of Marietta ("First Bank"), is organized under the laws of Ohio while defendant Bright Banc Savings Association ("Bright Banc") is organized under the laws of Texas and has its principal place of business in Dallas, Texas. Both First Bank and Bright Banc are successor corporations to the parties who signed the contracts which are the basis of this action. On June 15, 1985, plaintiff First Bank acquired all the assets and assumed all the liabilities of Citizens Building Loan & Savings Association of Mt. Vernon, Ohio. On December 31, 1984, defendant Bright Banc acquired the outstanding stock of Texas Federal Savings & Loan Association.

The predecessor corporations of the present parties signed two contracts. The first is an agreement under which Texas Federal sold and Citizens purchased an interest in a mortgage loan to OLM Associates, Ltd. ("OLM Loan"). The plaintiff alleges that on or before July 1985 OLM Associates, Ltd. was in default relating to shortage of funds and other terms and provisions of the loan documents. By the following month the plaintiff alleges that OLM Associates, Ltd. was in default under the terms of the contract for failure to remedy mechanics liens. When the loan matured on February 2, 1986, the borrower, OLM Associates, Ltd. failed to pay as required by the loan documents.

The plaintiff alleges that the defendant has failed to follow the terms of the agreement in instituting actions for payment, monitoring the debt, notifying the plaintiff and modifying the terms of the agreement. The plaintiff alleges essentially the same accusations with respect to a second agreement wherein the plaintiff purchased an interest in a mortgage loan to Young Companies in IV, a Texas general partnership ("Young Loan").

The affidavits submitted on behalf of the plaintiff state that the defendant solicitated participation in the OLM loan by letter dated July 18, 1983 from James Smith, Loan Officer of Texas Federal. The defendant allegedly solicited participation in other loans at the same time and later in 1984. The transactions were negotiated via telephone and correspondence. The contracts that were completed were sent to Ohio and signed in Ohio by plaintiff. The defendant Bright Banc is an affiliate of Bright Mortgage Company an Ohio corporation which is a wholly owned subsidiary. There are no facts in the record to suggest that the defendant's Ohio subsidiary had anything

to do with the transactions which form the basis of this action. However, several officers of the defendant bank are also officers of the Ohio subsidiary.

The defendant's affidavits assert that Bright Banc pays no taxes in Ohio, is not registered in Ohio, owns no property and has no offices or personnel here. Furthermore, the OLM and Young loans were for construction projects located in Texas and the contractors and owners of the projects are all Texas residents. Financial institutions located in New York, Texas, and Maryland also participated in the loans. No agent of the defendant ever appeared in Ohio; all face-to-face negotiations occurred in Texas. The plaintiff does not contest any of these facts. The issue then is whether the above facts are sufficient to establish *in personam* jurisdiction over the defendant Bright Banc.

## II. APPLICABLE LAW

### A. PERSONAL JURISDICTION

The recent Sixth Circuit case of *Lipton Distributing Company v. Dribeck Importers, Inc.*, 811 F.2d 967 (6th Cir.1987) sets out the analysis that is required to determine whether personal jurisdiction exists:

In examining whether jurisdiction exists, a federal court sitting in diversity must look to the forum state's long-arm statute and must construe that statute within the bounds of the due process clause. *See In–Flight Devices Corp. v. Van Dusen Air, Inc.*, 466 F.2d 220, 224 (6th Cir.1972); *Southern Machine Co. v. Mohasco Industries, Inc.*, 401 F.2d 374 (6th Cir.1968). The Ohio long-arm statute permits a court to 'exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's ... [t]ransacting any business in this state....' Ohio Rev.Code § 2307.382(A)(1).

This Ohio statute has been construed to extend to the outer limits of due process, *see In–Flight Devices*, 466 F.2d at 225, and thus an Ohio personal jurisdiction analysis becomes an examination of constitutional limitations. A federal court sitting in diversity may exercise personal jurisdiction within the limits of the due process clause only so long as the defendant has minimum contacts with the forum state—contacts substantial enough as not to offend traditional notions of fair play and substantial justice. *National Can Corp. v. K Beverage Co.*, 674 F.2d 1134, 1136 (6th Cir.1982) (citing *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 [100 S.Ct. 559, 564, 62 L.Ed.2d 490] (1980)). We have identified three criteria that must be satisfied in determining whether a non-resident defendant has had sufficient contacts with the forum state to support personal jurisdiction. 'First, the defendant must purposefully avail himself of the privilege of acting in the forum state.... Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connnection with the forum to make the exercise of jurisdiction over the defendant reasonable.' *Southern Machine Co. v. Mohasco Industries, Inc.*, 401 F.2d at 381 (footnote omitted).

*Lipton*, 811 F.2d at 969.

The above formula is not to be applied mechanically but rather it is to be applied in light of all the particular facts in each case. *Welsh v. Gibbs*, 631 F.2d 436 (6th Cir.1980), *cert. denied*, 450 U.S. 981, 101 S.Ct. 1517, 67 L.Ed.2d 816 (1981); *In–Flight Devices, supra*. Since this issue of whether personal jurisdiction exists will be determined only on the basis of written materials, the plaintiff need only establish a *prima facie* case. *Neiman v. Rudolf Wolff and Co.*, 619 F.2d 1189 (7th Cir.1980) *cert. denied*, 449 U.S. 920, 101 S.Ct. 319, 66 L.Ed.2d 148. The first prong of the *Mohasco* test is whether the defendant has "acted" within Ohio.

In this Circuit one has 'acted' so as to transact business in a state 'when obligations created by the defendant or business operations set in motion by the defendant have a realistic impact on the commerce of that state.' Such 'acts' be-

come purposeful if the defendant 'should have reasonably foreseen that the transaction would have consequences in that state.' *In–Flight Devices,* 466 F.2d 220, 226, *quoting, Southern Machine Co. v. Mohasco Industries, Inc.,* 401 F.2d 374 (6th Cir.1968).

The purposeful action test is merely a baseline requirement which is designed to ensure that the defendant has become involved with Ohio through "actions freely and intentionally done." *In–Flight,* 466 F.2d at 228. Defendant Bright Banc freely and intentionally solicited business in Ohio through letters and telephone calls. Through its actions, it obtained large sums of money from the plaintiff, among others, to participate in funding mortgage notes to borrowers in Texas, the OLM and Young loans. In return the plaintiff was to earn a set percentage on its investment. The defendant solicited participants in several states. While the existence of substantial interstate transactions cannot substitute for some direct contacts with the forum state, it nevertheless indicates that the defendant cannot claim surprise that it may be involved in litigation outside of Texas. *In–Flight, supra* at 234.

Nor is it determinative that there has been no contact by any agent of the defendant, except through telephone calls and letters. "A letter or a telephone call may, in a given situation, be as indicative of substantial involvement with the forum state as a personal visit by the defendant or its agents." *Id.* at 235.

The second test is also met in this case since the causes of action directly arise out of the alleged breach of the contracts in this case. Finally, it does not violate traditional notions of fair play to assert jurisdiction over the defendant, a corporation that solicited business in Ohio and whose alleged breach could have significant financial repercussions on the financial health of the plaintiff and its shareholders and depositors. Consequently, Ohio as the forum state has a significant interest so that exercise of jurisdiction is reasonable, thus satisfying the third part of the required analysis.

Accordingly, defendant's motion to dismiss for lack of personal jurisdiction is DENIED.

## B. VENUE

28 U.S.C. § 1404(a) provides, in regard to change of venue, that:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

The threshold consideration under this section is whether venue would be proper in the United States District Court of Texas, Dallas District. An action "might have been brought" in a transferee court if

> (1) The court has jurisdiction over the subject matter of the action,
>
> (2) Venue is proper there, and
>
> (3) The defendant is amenable to process issuing out of the transferee court.

*Continental Grain Co. v. Barge F.B.L.— 585,* 364 U.S. 19, 80 S.Ct. 1470, 4 L.Ed.2d 1540 (1960); *Neff Athletic Lettering Co. v. Walters,* 524 F.Supp. 268, 271 (S.D.Ohio 1981). The facts in the record indicate that this case could have been brought in the transferee court.

At the outset the Court notes that whether or not it had found *in personam* jurisdiction in this Court, it still has authority to transfer venue. *Taylor v. Love,* 415 F.2d 1118 (6th Cir.1969), *cert. denied,* 397 U.S. 1023, 90 S.Ct. 1257, 25 L.Ed.2d 533 (1970); *DeMoss v. First Artists Production Co.,* 571 F.Supp. 409 (N.D.Ohio 1983), *app. dismissed,* 734 F.2d 14 (6th Cir.1984).

The factors to be considered under § 1404(a) are similar to those weighed by courts in determining *forum nonconveniens* motions; however, transfers pursuant to § 1404(a) may be granted "upon a lesser showing of inconvenience." *Norwood v. Kirkpatrick,* 349 U.S. 29, 32, 75 S.Ct. 544, 546, 99 L.Ed. 789 (1955). The plaintiff's choice of forum is to be given considerable weight and the balance of convenience, considering all of the relevant factors, should be strongly in favor of a transfer before such will be granted. *Artisan Develop-*

*ment v. Mountain States Development Corp.*, 402 F.Supp. 1312, 1314 (S.D.Ohio 1975). The moving party, in this case the defendant, has the burden of demonstrating that the case should be transferred to a different forum. Courts are to consider both the private interest of the litigants and the public's interest in the administration of justice. *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508–509, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947). The litigants' interests include:

> The relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of case easy, expeditious and inexpensive.

*Gulf Oil*, 330 U.S. at 508, 67 S.Ct. at 843.

Public interests include docket congestion; the burden of trial to a jurisdiction with no relation to the cause of action; value of holding trial in a community where the public affected live; and the familiarity of the court with the controlling law. *Id.* at 508, 67 S.Ct. at 843. "There is an appropriateness—in having the trial in a diversity case in a forum that is at home with the state law that must govern the case, rather than having court in some other forum untangle problems in conflict of laws, and in law foreign to itself." *Id.* at 509, 67 S.Ct. at 843. All the contracts which form the basis of this action specify that Texas law is to be applied. The Court also notes that the projects which are subject of the mortgage notes and the defaults thereunder are located in Texas. Likewise all documentation and witnesses who would be pertinent to this action are also, for the most part, in Texas.

■ Having considered the facts of the present action in light of the above factors, this Court concludes that transfer to another district is required. While this Court determines that the plaintiff has a technical right to bring its action in this forum, courts have held that deference to the plaintiff's freedom to select his own forum "has minimal value where none of the conduct complained of occurred in the forum selected by the plaintiff." *Chicago, Rock Island & Pacific Railroad Co. v. Igoe*, 220 F.2d 299, 304 (7th Cir.1955), *cert. denied*, 350 U.S. 822, 76 S.Ct. 49, 100 L.Ed. 735.

An analysis of the documents before this Court indicates that none of the conduct which upon which the present breach of contract action is based occurred in this district. The cause of action has little connection with the forum chosen by the plaintiff. Accordingly, this Court determines that the defendant's motion to transfer pursuant to 28 U.S.C. 1404(a) is well taken is therefore GRANTED.

The Clerk of Courts is instructed to transfer this action to the United States District Court of Texas, Dallas Division.

It is so ORDERED.