Stacy T. KAY, Plaintiff,

v.

NATIONAL CITY MORTGAGE
CO., Defendant.

No. 3:03cv160.

United States District Court,
S.D. Ohio,
Western Division.

July 9, 2007.

Brian K Murphy, Joseph F. Murray, Murray Murphy Moul & Basil, Columbus, OH, Dennis T. Trainor, Barrett & Associates, Chicago, IL, John T. Murray, Murray & Murray, Sandusky, OH, M. Scott Barrett, Barrett & Associates, Bloomington, IN, Sylvia A. Goldsmith, Avon, OH, Charles R. Griffin, Jr., The Griffin Firm LLC, Anderson, SC, for Plaintiff.

Daniel Joseph Tobin, Kirkparick & Lockhart Nicholson Graham LLP, Washington, DC, Martin A. Beyer, Sebaly Shillito & Dyer, Dayton, OH, for Defendant.

## DECISION AND ENTRY SUSTAINING DEFENDANT'S MOTION TO TRANSFER VENUE (DOC. # 14); CAPTIONED CAUSE TRANSFERRED TO DISTRICT OF SOUTH CAROLINA; TERMINATION ENTRY

RICE, District Judge.

Plaintiff is an individual mortgage borrower who filed the present two-count[1] class action[2] complaint against National City Mortgage Co. ("National City" or "Defendant"), his mortgage lender, alleging violations of the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.* ("TILA"). He alleges that Defendant charged broker fees and/or points on his loans, as well as on those of other putative class members, without treating such fees as prepaid finance charges as required by the TILA. The Complaint alleges that fees paid by Defendant to a broker—the Kelly Mortgage Group (the "Kelly Group")—were mischaracterized in order to avoid disclosure of finance charges (Compl.(Doc.# 1) at ¶ 13). This, according to Plaintiff, resulted in misrepresentation of the actual amount financed by Defendant, as well as understating the APR, thus masking the actual cost of the extension of credit (*Id.*). Subject matter jurisdiction is proper pursuant to 28 U.S.C. § 1331.

Plaintiff is a resident of South Carolina whose mortgage loan, which is the subject of this litigation, is purportedly secured by his home in South Carolina. The class that Plaintiff seeks to represent consists of "all persons who, during the applicable periods of limitations, were consumer customers of The Kelly Mortgage Group, Inc., f/k/a C & S Mortgage, Inc. (the 'Kelly Group'), and financed a loan with [National City]" (Compl. at ¶ 16). Kelly Mortgage Group, Inc., is a mortgage broker based in South Carolina. Additionally, a preliminary review of National City's records reports that all borrowers who have connections to the Kelly Group are South Carolina residents whose mortgage loans are secured by property located in South Carolina (Affidavit of Daniel J. Tobin ("Tobin Affidavit"), Doc. # 14 Ex. 1, at ¶ 6). Defendant has also filed two counterclaims in this matter, alleging breach of contract (Count 1) and asking for a declaratory judgment that it is entitled to foreclose on

---

1. Plaintiff has filed a Motion for Leave to File First Amended Complaint (Doc. # 13), which would add a claim under South Carolina's Unfair Trade Practices Act. The Court has not yet ruled on said motion, preferring to resolve the venue issue first.

2. Plaintiff has filed a Motion to Continue Class Certification and Discovery Deadline (Doc. # 28), which the Court has not yet ruled upon, pending a decision on the venue question.

the property at issue (Count 2) (Doc. # 11).

Defendant, which maintains its headquarters in Miamisburg, Ohio, has filed a Motion to Transfer Venue (Doc. # 14), pursuant to 28 U.S.C. § 1404(a), to the United States District Court for the District of South Carolina. For the reasons explained herein, Defendant's motion is sustained.

## I. *Analysis*

■ Defendant does not suggest that venue in this Court is improper. Instead, it argues that this Court is not the most convenient forum for resolution of this matter. "Even in cases where venue is proper, a court may entertain a motion to transfer if there exists a better forum for the resolution of the dispute between the parties." *SKY Technology Partners v. Midwest Research Institute*, 125 F.Supp.2d 286, 290–91 (S.D.Ohio 2000), *citing Martin v. Stokes*, 623 F.2d 469, 474 (6th Cir.1980).

## A. *Standards Governing Motions for Transfer to a More Convenient Forum*

■ The standard for transfer of venue to a more convenient forum is found in 28 U.S.C. § 1404(a), which provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." Accordingly, the threshold consideration under § 1404(a) is whether the action "might have been brought" in the transferee court. An action "might have been brought" in a transferee court if:

a. The court has jurisdiction over the subject matter of the action

b. Venue is proper there, and

c. The defendant is amenable to process issuing out of the transferee court. *SKY Technology*, 125 F.Supp.2d at 291, *citing Continental Grain Co. v. Barge FBL–585*, 364 U.S. 19, 80 S.Ct. 1470, 4 L.Ed.2d 1540 (1960).

■ Since the present matter arises under a federal statute, the district court in South Carolina would have subject matter jurisdiction over it, pursuant to 28 U.S.C. § 1331. Additionally, venue would be proper in South Carolina under the general venue statute, 28 U.S.C. § 1391(b)(2), if "a substantial part of the events or omissions giving rise to the claim" arose there. This is true even if a substantial part of the events giving rise to the claims are found to have occurred in Ohio. The fact that substantial activities took place in Ohio does not disqualify South Carolina as a proper venue as long as "substantial" activities took place there, as well. *See First of Mich. Corp. v. Bramlet*, 141 F.3d 260, 263 (6th Cir.1998). South Carolina should not be disqualified even if it is shown that the activities in Ohio were more substantial. *Id.* Since all of the loan contracts in the case *sub judice* were negotiated in South Carolina and are secured by South Carolina property, venue would have been proper in South Carolina. Finally, Defendant, by bringing the instant motion, appears to concede that it would be subject to process issuing out of the court in South Carolina. In any case, as noted, the business relationship between the parties arose in South Carolina.

■ Once it is determined that a case could have been brought in the transferee court, the issue becomes whether transfer is justified under the balance of the language of § 1404(a), which analyzes whether transfer is justified for "the convenience of parties and witnesses" and "in the interest of justice." The moving party has the burden of establishing the need for a

transfer of venue. *Jamhour v. Scottsdale Ins. Co.,* 211 F.Supp.2d 941, 945 (S.D.Ohio 2002) (citations omitted). The Supreme Court has established standards for evaluating these private and public interests. The litigants' interests (i.e., the private interests) include:

> the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive.

*Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 241 n. 6, 102 S.Ct. 252, 258, 70 L.Ed.2d 419, (1981), *quoting Gulf Oil v. Gilbert,* 330 U.S. 501, 508, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947). Public interests include "[d]ocket congestion, the burden of trial to a jurisdiction with no relation to the cause of action, the value of holding trial in a community where the public affected live, and the familiarity of the court with controlling law." *Jamhour,* 211 F.Supp.2d at 945, *citing Gulf Oil,* 330 U.S. at 508, 67 S.Ct. 839, 91 L.Ed. 1055.

The balance of convenience, considering all the relevant factors, "should be strongly in favor of a transfer before such will be granted." *First Bank of Marietta v. Bright Banc Savings Assoc.,* 711 F.Supp. 893, 896–97 (S.D.Ohio 1988). The decision of whether to grant a change of venue, however, ultimately lies within the sound discretion of the district court. *Hanning v. New England Mut. Life Ins. Co.,* 710 F.Supp. 213, 215 (S.D.Ohio 1989).

### B. *Application*

Defendant urges that transfer to South Carolina is appropriate because the relevant sources of proof and potential witnesses are located in South Carolina and because transfer would avoid the multiplicitous litigation that would stem from its defense of a class action in this Court, due to the legal impossibility of joining absent class members in its counterclaims in this District. Conversely, it argues that the mere fact that its corporate headquarters are located in Ohio is insufficient to support Plaintiff's contention that this Court is the best venue. Plaintiff, on the other hand, discounts the significance of Defendant's alleged inability to join absent potential class members, and argues as well that Ohio is convenient both for the parties and the witnesses. Moreover, Plaintiff argues that its choice of forum should be given significant weight.

### 1. *Interests of the Litigants*

### a. *Plaintiff's Choice of Venue*

A plaintiff's choice of forum is generally entitled to substantial weight. However, several courts have indicated that if the plaintiff chooses a forum that is not his residence, this choice is given less consideration. *See, Lindley v. Caterpillar, Inc.,* 93 F.Supp.2d 615, 617 (E.D.Pa.2000) ("when the plaintiff does not live or work in [the chosen] jurisdiction, the significance of this preference is minimized"); *Hanley v. Omarc, Inc.,* 6 F.Supp.2d 770 (N.D.Ill. 1998); *Tranor v. Brown,* 913 F.Supp. 388, 391 (E.D.Pa.1996); *Verosol B.V. v. Hunter Douglas, Inc.,* 806 F.Supp. 582, 592 (E.D.Va.1992); *Roberts Metals, Inc. v. Florida Properties Marketing Group, Inc.,* 138 F.R.D. 89, (N.D.Ohio 1991) (weight given to plaintiff's choice of forum diminished because acts occurred outside the forum but additional weight accorded because plaintiff was headquartered in Ohio), *aff'd* 22 F.3d 1104, 1994 WL 84735 (Fed. Cir.1994).

Plaintiff strives mightily to argue that, despite his being a resident of South

Carolina, his preference to litigate in Ohio should still be given substantial weight. Plaintiff cites three cases in support (Doc. # 20 at 6–7, *citing Steelcase, Inc. v. Mar-Mol, Inc.*, 210 F.Supp.2d 920, 938 (W.D.Mich.2002); *Tuff Torq Corp. v. Hydro–Gear L.P.*, 882 F.Supp. 359, 362 (D.Del.1994); *Willemijn Houdstermaatschaapij BV v. Apollo Computer*, 707 F.Supp. 1429, 1436–37 (D.Del.1989)), properly acknowledging that each of these cases recognizes that, in such situations, the operative facts must reveal a connection to the forum state (*Id.*).[3] Specifically, Plaintiff insists that the following facts are significant with respect to his choice of Ohio: that National City has its principal place of business within this District, that it collects payments in this District, and that the practices and policies at issue in this case were adopted and/or implemented in this District (Doc. # 20 at 7). Plaintiff also refers to a grand jury that has supposedly been convened in this District "to investigate, *inter alia*, National City's conduct in connection with loan transactions like those at issue in this case" (*Id.*).

None of these points, however, constitutes a fact or set of facts revealing a connection to Ohio. *First*, with respect to the location of National City's principal place of business in this District, this fact alone is not dispositive. Instead, National City's choice to locate its headquarters in Ohio is potentially significant for present purposes only to the extent that it implicates other factors identified by Plaintiff, to wit: Defendant's business policies and practices at issue in this litigation. *Second*, National City's policies and practices *in general* are not at issue in this litigation. Instead, the issues relevant in this matter are National City's alleged mischaracterization and misrepresentation of fees paid to the Kelly Group and the extent of Plaintiff's (and, possibly, the class's) reliance thereon (Compl. at ¶¶ 41–44). Read as a whole, Plaintiff's Complaint alleges violations of the TILA arising out of Defendant's specific dealings with the Kelly Group, in which Defendant allegedly inaccurately disclosed the finance charge in connection with Plaintiff's loan, thereby understating the actual cost of Plaintiff's credit. It does not allege that Defendant violates the Truth in Lending Act as a matter of general policy. *Third*, although it is true that Defendant collects payments at its headquarters in Ohio, Defendant is correct in arguing that the collection of payments is not material to Plaintiff's claim (Doc. # 23 at 5). Instead, as noted *supra*, Defendant's alleged non-disclosure and misrepresentation of finance charges are the subject of this litigation. *Fourth*, although Plaintiff asserts that a grand jury has convened in this District to investigate Defendant's conduct in the sorts of transactions at stake herein, Defendant asserts that no such factual basis exists for Plaintiff's claim. Instead, Defendant suggests that Plaintiff is mistakenly referring to a

---

**3.** To be sure, to the extent that Plaintiff cites any of those three cases for the proposition that a non-resident plaintiff's choice of venue enjoys the same paramount status under § 1404(a) as that of a resident plaintiff, he is mistaken. *See Steelcase*, 210 F.Supp.2d at 938, *citing Lindley*, 93 F.Supp.2d at 617; *Icon Indus. Controls Corp. v. Cimetrix, Inc.*, 921 F.Supp. 375, 384 (W.D.La.1996) ("Where the plaintiff does not reside in the chosen forum or where none of the operative facts occurred in that district, courts assign less weight to the plaintiff's choice of forum."); *Tuff Torq*, 882 F.Supp. at 362 ("The movant's burden is easier when the plaintiff has not brought suit on its home turf because the interest in litigation in a convenient forum is reduced."); *Willemijn Houdstermaatschaapij v. Apollo Computer*, 707 F.Supp. 1429 at 1436 (D.Del.1989), *citing Davis Constructors v. Dartco Manufacturing, Inc.*, 668 F.Supp. 380, 384 (D.Del. 1987) ("plaintiff's choice of forum is to be accorded less respect where that forum is not plaintiff's 'home turf.' ").

grand jury in South Carolina that issued indictments on November 18, 2003 (*Id.*). Yet, neither party has provided to the Court any documentation of a supposed grand jury investigation or the issuing of indictments. Accordingly, this factor weighs neither in favor of transferring the action nor in keeping it in this Court.

On the whole, the factors identified by Plaintiff do not demonstrate a connection with this matter to Ohio. Additionally, other factors, ignored by Plaintiff, further demonstrate this litigation's connection to South Carolina. Specifically, as has already been noted, Plaintiff is a resident of South Carolina, as is the Kelly Group and the members of the class sought to be certified herein by Plaintiff. Moreover, Plaintiff applied for credit in South Carolina, the disclosure regarding said credit at issue in this litigation occurred in South Carolina, and the loan closed in South Carolina. Finally, the property secured by Plaintiff's loan is located in that state, as is the property secured by the loans of the members of the potential class.

In sum, the location of the operative facts in this litigation is decidedly one-sided in favor of South Carolina. At a minimum, this absence of events connecting the litigation to Ohio negates the deference ordinarily given to a plaintiff's choice of venue.[4]

b. *Access to Proof and Witnesses*

■■■■■ Factors bearing on the litigants' interest in the venue include the relative access to proof and the availability of compulsory process for unwilling witnesses, as well as the cost of obtaining willing witnesses. *Piper Aircraft*, 454 U.S. at 241 n. 6, 102 S.Ct. at 258, *quoting Gulf Oil v. Gilbert*, 330 U.S. at 508, 67 S.Ct. at 843 n. 6. The convenience of witnesses is considered to be of the utmost importance: "Probably the most important factor, and the factor most frequently mentioned, in passing on a motion to transfer under 28 U.S.C. § 1404(a), is the convenience of witnesses." 15 C.A. Wright, A.R. Miller & E.H. Cooper, Federal Practice and Procedure, § 3851. Again, these factors weigh in favor of transfer to South Carolina.

■■■■ Defendant argues that the convenience of witnesses weighs in favor of transfer to South Carolina because the borrower (Plaintiff), the mortgage broker, the loan officer and the closing agent all reside in South Carolina. As Defendant notes, none of these individuals, except for Plaintiff, could be compelled by this Court to testify at a trial in this Court (Doc. # 14 at 12). Further, even if these witnesses need not be compelled to testify, the inconvenience imposed upon them by requiring their travel from South Carolina to Ohio weighs in favor of transferring the case to South Carolina. *See, e.g., Jamhour*, 211 F.Supp.2d at 948 (factor concerning convenience of witnesses weighed in favor of transfer where all witnesses who could testify as to the trial's key issue, with the exception of the plaintiff, resided in the transferee state).

Plaintiff responds by insisting that his claims do not require the testimony of the above witnesses identified by Defendant.[5]

---

**4.** In fact, the Court notes recent authority suggesting that the absence of said operative facts or events results in granting a motion to transfer. *See GMAC/Residential Funding Corp. v. Platinum Co. of Real Estate and Financial Services, Inc.*, 2003 WL 1572007 (D.Minn. Mar.13, 2003), *quoting* 17 Moore's Federal Practice § 111.13[1][c] ("Indeed, 'a motion to transfer to the district in which the events occurred is likely to succeed.' ").

**5.** Plaintiff also complains that Defendant has not identified the potential witnesses (Doc. # 20 at 11). This is simply not the case. As noted *supra*, Defendant identified the mortgage broker, the loan officer and the closing

Instead, he asserts that "Defendant's liability will be established on the face of the subject loan documents, including the TILA disclosure statements and the loan histories, both of which should be maintained on National City's computers—computers located in this judicial District" (Doc. # 20 at 9 (footnote omitted)). Additionally, Plaintiff contends that, to the extent that testimony from such individuals residing in South Carolina is necessary, said individuals could be subpoenaed to appear in South Carolina for video depositions that could be used at a trial in this district (*Id.* at 10).

Plaintiff's contention that Defendant's liability may be proved by admission of documents retrieved from its computers in Ohio is mistaken. The explanation for this requires a brief analysis of the substantive issues involved in this matter. Specifically, Plaintiff seeks actual damages under the TILA (Compl. ¶ 44). *See* 15 U.S.C. § 1640. In the Sixth Circuit, a plaintiff must show detrimental reliance in order to prevail on a claim for actual damages under that statute. *Stout v. J.D. Byrider*, 228 F.3d 709, 718 (6th Cir.2000). To do so, the plaintiff must show that: "(1) he read the TILA disclosure statement; (2) he understood the charges being disclosed; (3) had the disclosure statement been accurate, he would have sought a lower price; and (4) he would have obtained a lower price." *Parra v. Borgman Ford Sales, Inc.*, 2001 WL 1836190 at *2 (W.D.Mich.2001), *quoting Peters v. Jim Lupient Oldsmobile Co.*, 220 F.3d 915, 917 (8th Cir.2000). Quite simply, these requirements cannot be proved merely by reference to documents maintained on National City's computers at its corporate headquarters in Ohio. Instead, they rely on unique factual determinations that focus on Plaintiff's subjective understanding of the statement provided to him by Defendant during the loan transaction and his intention and ability, in this particular circumstance, to obtain a more favorable finance charge elsewhere. Especially with respect to this latter consideration (i.e., whether Plaintiff would have sought *and* obtained a better price elsewhere), these showings have little, if anything, to do with information that would or could be contained on Defendant's computers. Instead, in all likelihood, they will require surveying the mortgage market in South Carolina to determine whether Plaintiff could have obtained a more favorable price.

Additionally, Plaintiff's suggestion for addressing the witness problem—arranging for video depositions to occur in South Carolina—would likely prove to be both inefficient and cumbersome. Practically speaking, any trial witness would likely need to sit for two video depositions—one for the purposes of discovery and another for use at trial. Moreover, trial by video tape is simply not preferable to live examination in front of a jury.[6]

### c. Other Practical Problems

Perhaps the strongest reason supporting transfer to South Carolina falls under the heading of "all other practical problems that make trial of a case easy,

---

agent involved in Plaintiff's loan as potential witnesses.

**6.** Defendant also notes that Plaintiff has served notices of depositions on four individuals residing in South Carolina who could not be compelled to appear in Ohio, insisting that Plaintiff has therefore "implicitly conceded that the availability of witnesses is a factor warranting transfer to South Carolina" (Doc. # 23 at 7). Defendant, however, provides no affidavit describing said deposition notices. Accordingly, the Court will not consider this argument.

expeditious and inexpensive." *Piper Aircraft,* 454 U.S. at 241 n. 6, 102 S.Ct. at 258. Defendant argues that this Court's likely inability to exercise personal jurisdiction over its potential counterclaims against absent class members and over various potential third-party claims (whereas said claims could successfully be asserted in South Carolina) further justifies the transfer, given the specter of multiple actions in this District and in that of South Carolina.

 Under § 1404(a), avoidance of a multiplicity of litigation is an important factor in determining what "the interests of justice" require. *See Continental Grain Co. v. Barge FBL–585,* 364 U.S. 19, 20–21, 80 S.Ct. 1470, 1471–1472, 4 L.Ed.2d 1540 (1960) (finding transfer of case under 28 U.S.C. § 1404(a) so that two lawsuits arising from single occurrence would be heard in same venue to be "in the interest of justice"). Further, concerns of convenience and justice under § 1404(a) properly consider the effect of transfer (or refusal to transfer) on potential third parties to the litigation. *See, e.g., In re Volkswagen AG,* 371 F.3d 201, 203 (5th Cir.2004) ("There is clearly nothing in § 1404(a) which limits the application of the terms 'parties' and 'witnesses' to those involved in an original complaint."). Moreover, transfer may be justified where the transferee court would have jurisdiction over a proposed third-party defendant who would not be subject to jurisdiction in the transferor court. *See, e.g., Deepwater Exploration Co. v. Andrew Weir Ins. Co.,* 167 F.Supp. 185, 186 n. 5 (D.La.1958) (Skelly Wright, J.) (transfer under § 1404 was appropriate where proposed third-party defendant was not subject to service of process from transferor court, but was subject to same from transferee court).

Here, Defendant describes a number of potential third parties that likely would not be subject to personal jurisdiction in this Court. *First,* Defendant indicates that it desires to pursue a quiet title action to obtain judicial confirmation that Plaintiff owns his property. This action would be in conjunction with Defendant's counterclaim against Plaintiff alleging default on his mortgage note (Doc. # 14 at 8).[7] Since the defendant in the quiet title action is a parcel of real property located in South Carolina, this Court could not exercise personal jurisdiction in said action. *Second,* Defendant suggests a "substantial likelihood" of its assertion of third-party claims against others in order to establish liability for the creation of title defects, as well as claims for indemnity and contribution for any potential liability to Plaintiff and the putative class (*Id.* at 9). Again, since the third-party defendants of these actions would lack contacts with Ohio, they would not be subject to personal jurisdiction in this Court. *Third,* Defendant suggests that, in the event that the class proposed by Plaintiff is certified, the ability to assert counter-claims against absent class members would be similarly imperiled by this Court's inability to exercise personal jurisdiction over absent class members who lack contacts with Ohio. For support, Defendant points to the Supreme Court's decision in *Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985), wherein the Court held that because the state places a higher burden on absent defendants in subjecting them to suit (and possible liability) than on absent plaintiffs in a class action, the Due Process Clause does not and need not afford the latter as much protection from a court's exercise of jurisdiction over them. *Id.* at

---

7. As Defendant concedes, this Court obviously has personal jurisdiction over the latter ac-
tion—the counter-claim against Plaintiff.

808–11, 105 S.Ct. 2965. Therefore, Defendant argues, assertion of counterclaims in this Court against absent class members may very well violate due process. Subsequent to the Court's decision in *Shutts*, authorities on class actions have noted that

> procedural due process standards mandate that counterclaims against individual class members, if permitted, can only be valid if the court has personal jurisdiction and venue over the countersued absent class member, who also must be served with counterclaim papers so that the class member can individually defend against the counterclaim. At a minimum, due process requirements bar counterclaims against nonresident class members who are beyond the territorial personal jurisdiction of the forum.

2 Newberg on Class Actions § 4.34 (4th ed.) (footnotes omitted). *Shutts* itself left open the possibility that the assertion of counterclaims against absent class members would violate due process by expressly noting that its holding (that due process does not and need not protect absent plaintiffs) did not reach the issue of plaintiffs who are subject to counterclaims: "We are convinced that [counterclaims] are rarely imposed upon plaintiff class members, and that the disposition of [whether such imposition poses due process problems] is best left to a case which presents [the issues] in a more concrete way." 472 U.S. at 810 n. 2, 105 S.Ct. at 2973 n. 2.

Plaintiff first responds that the counterclaims identified by Defendant are not compulsory under Fed.R.Civ.P. 13 because said counterclaims are not subject to this Court's jurisdiction (Doc. # 20 at 10–11).[8] The Court agrees with Defendant that this argument misses the point. Regardless of whether Defendant is *required* to bring said counterclaims, the fact that it is *unable* to bring them in this Court weighs in favor of transfer. As noted *supra*, avoidance of a multiplicity of litigation is an important factor under § 1404(a). Quite simply, transferring this matter to South Carolina will avoid such multiplicity, whereas retaining it in this Court will foster same.

Next, Plaintiff argues that "most witnesses National City would desire to offer in support of its counterclaims are likely to be within its control" (Doc. # 20 at 11). This argument, too, misses the point. Defendant's argument with respect to potential counterclaims is not that pursuing said claims in Ohio would be an inconvenience to the witnesses. Instead, it argues that it would be *impossible* to assert its counterclaims in Ohio, because the defendants in said counterclaims would lack sufficient contacts with the forum, and, therefore, personal jurisdiction would be lacking. Accordingly, regardless of inconvenience imposed on witnesses called at trial of potential counterclaims, the impossibility of obtaining personal jurisdiction over the defendants of those potential actions in this court weighs in favor of transfer.

██ Finally, Plaintiff argues that "the existence of yet unidentified alleged third-party claims would make the conduct of this action unmanageable," suggesting therefore that the Court refrain from considering any justifications for transfer arising out of Defendant's proposed third-party actions (*Id.*). Plaintiff relies on *Seafood*

---

**8.** The Court agrees that Defendant's counterclaim is not compulsory. However, it does not necessarily follow that this Court lacks subject matter jurisdiction to hear it. Although Defendant's counterclaim does not arise under federal law, the parties are of diverse citizenship, and the amount in controversy is more than $75,000.00, and, as such, this Court could exercise jurisdiction over it pursuant to its diversity jurisdiction, 28 U.S.C. § 1332.

*Imports, Inc. v. A.J. Cunningham Packing Corp.*, 405 F.Supp. 5 (S.D.N.Y.1975), which rejected an attempt by a third-party defendant to transfer the third-party claim to an alternative venue. *First*, that decision is distinguishable, insofar as in the case *sub judice*, it is Defendant, and not a third-party defendant, who is asserting § 1404(a). *See id.* at 8 (concluding that third-party defendants do not have standing to object to venue). *Second*, to the extent that *Seafood Imports* could support the proposition that § 1404(a) is not concerned with third parties, the Court respectfully disagrees, siding instead with the Fifth Circuit, which held that nothing in § 1404(a)· limits the application of the terms "parties" and "witnesses" to those involved in an original complaint. *In re Volkswagen AG, supra.*

Moreover, even assuming *arguendo* that the addition of the third-party defendants identified by Defendant would make the action unmanageable, there is no support for the proposition that this justifies overruling Defendant's motion to transfer under § 1404(a). To be sure, the assertion of counterclaims against numerous members of the class may indeed prove unmanageable, but the remedy for that problem would be to refuse class certification or to certify the class in a manner that would make the matter more manageable. *See, e.g., Roper v. Consurve, Inc.*, 578 F.2d 1106, 1116 (5th Cir.1978) (holding in a TILA suit that possible assertion of counterclaims by the defendant did not preclude bringing the suit as a class action because the trial court has continuing authority under Rule 23 to exclude counterclaim defendants from the plaintiff class or to separate and sever the class into two

classes, one with counterclaims and the other without counterclaims), *aff'd sub nom. Deposit Guaranty Nat. Bank, Jackson, Miss. v. Roper*, 445 U.S. 326, 100 S.Ct. 1166, 63 L.Ed.2d 427 (1980). The Court sees no reason to use the possibility that the action will be unmanageable as an excuse to refuse to transfer venue.

For all of the forgoing reasons, the Court believes that the private interests weigh strongly in favor of transfer to South Carolina.

### 2. *Interest of the Public*

■ The public interest to be considered in deciding a motion to transfer venue under § 1404(a) includes "[d]ocket congestion, the burden of trial to a jurisdiction with no relation to the cause of action, the value of holding trial in a community where the public affected live, and the familiarity of the court with controlling law." *Jamhour*, 211 F.Supp.2d at 945, *citing Gulf Oil*, 330 U.S. at 508, 67 S.Ct. 839, 91 L.Ed. 1055.

### a. *Docket Congestion*

■ Plaintiff is the only party that has supplied argumentation with respect to docket congestion, and in so doing, he concedes that the docket of the District Court for the District of South Carolina is less congested than this Court's docket. Specifically, Plaintiff reports that the median time elapsed from the filing of a suit to final disposition for civil cases in South Carolina for the year 2002 was 7.5 months, whereas that figure in this District was 11.3 months.[9] Plaintiff asserts, without support, that "these distinctions are rela-

---

9. Having accessed the same statistics for the year 2003, the Court finds the disparity to be almost exactly the same as in 2002. Specifically, in 2003, the median time elapsed for South Carolina was 8.2, whereas the median time elapsed for the Southern District of Ohio was 11.9. Administrative Office of the United States Courts, Federal Court Management Statistics, 2003.

tively insignificant, especially in a complex class action such as this," and that they "do not justify transferring the case to South Carolina" (Doc. #20 at 14). Although the Court agrees that the factor of docket congestion is not dispositive for purposes of ruling on the present motion, it disagrees that consideration of said congestion is not warranted. Indeed, it is a factor explicitly identified by the Supreme Court as pertinent to the public's interest in considering a motion to transfer. *See Piper Aircraft*, 454 U.S. at 241 n. 6, 102 S.Ct. at 258, *quoting Gulf Oil*, 330 U.S. at 508, 67 S.Ct. at 843. Accordingly, this factor narrowly weighs in favor of transfer to South Carolina.

b. *Burden of Trial to a Jurisdiction With No Relation to the Cause of Action*

▆▆ As noted *supra*, this jurisdiction's only relation to the cause of action is that Defendant's corporate headquarters are located here. On the other hand, Plaintiff, members of the putative class and the mortgage broker are residents of South Carolina. Further, the mortgage loan at issue in this matter was negotiated in South Carolina and is supported by property located in that state. Accordingly, although there is some relationship between this litigation and this forum, that relationship is minuscule, compared to the relationship between the litigation and South Carolina.

c. *Value of Holding Trial in a Community Where the Public Affected Live*

▆▆ By Plaintiff's own hypothesis, Defendant's actions giving rise to this litigation affected a number other people who obtained mortgages. Since all of these individuals reside in South Carolina, the Court concludes that this factor weighs heavily in favor of transfer to South Carolina.

d. *Familiarity of the Court with Controlling Law*

▆▆ Since this action arises under the Truth in Lending Act, a federal statute, both courts are equally familiar with the controlling law and each would be competent to adjudicate that claim. However, as Plaintiff concedes, counterclaims already filed by Defendant, *see* Doc. #12, are based primarily upon South Carolina law (Doc. #20 at 15). Nonetheless, Plaintiff argues that this factor weighs against transfer because "the overall dispute is weighed more heavily upon the determination of the class claims resting upon federal question jurisdiction" (Doc. #20 at 15). Plaintiff does not explain why this is the case. Even were the Court to assume that Plaintiff is correct that the dispute more heavily focuses on the federal questions raised in this litigation, there is no support for the conclusion that this would weigh against transfer. Instead, the Court believes that it would make this factor neutral with respect to transfer. However, to the extent that this factor requires the Court to address its familiarity with controlling law (and not which legal issues are more important to the litigation), the Court believes that the presence of Defendant's counterclaims under state law causes this factor to weigh in favor of transfer.[10]

II. *Conclusion*

Pursuant to 28 U.S.C. § 1404(a), consideration of the interests of the litigants as well as those of the public demonstrates

---

**10.** Additionally, the possibility that Plaintiff's complaint would be amended to include a claim under South Carolina's Unfair Trade Practices Act, *see* Motion for Leave to File First Amended Complaint (Doc. # 13), further weights this factor in favor of transfer.

overwhelmingly that this matter should be litigated in the U.S. District Court for the District of South Carolina. Accordingly, Defendant's Motion to Transfer Venue (Doc. # 14) is sustained.

The captioned cause is hereby ordered transferred to the United States District Court for the District of South Carolina and is ordered terminated upon the docket records of the United States District Court for the Southern District of Ohio, Western Division, at Dayton.